IN RE INTEREST OF T.E., S.E., AND R.E., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. S.E., APPELLANT.
455 N.W.2d 562

Filed May 18, 1990.   Nos. 89-1168, 89-1169.

Mark S. Trustin, of Trustin, Schweer, Ferraro & Van Robays, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Douglas County Separate Juvenile Court terminating appellant's parental rights. We affirm.

On appeal appellant contends, in sum, that the court erred in terminating her parental rights and in denying her motions to

dismiss.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires it to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of M.M., C.M., and D.M.*, 234 Neb. 839, 452 N.W.2d 753 (1990).

We have reviewed the record de novo and make the following findings of material fact. Appellant is the mother of three children: T.E., born February 17, 1984; S.E., born July 3, 1986; and R.E., born December 19, 1987. Each child apparently has a different biological father. The putative fathers were not made parties to the termination proceedings, and this appeal does not concern their parental rights.

T.E. and S.E. were removed from appellant's care in August 1986 and placed in the temporary custody of the Nebraska Department of Social Services. A petition was filed alleging that appellant could not care for her children due to her mental illness. An adjudication hearing was subsequently held. Appellant admitted the petition's allegations, and the court found the children to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). The court ordered the Department of Social Services to retain temporary custody. The matter was periodically reviewed. The Department of Social Services was ordered to retain custody, and appellant was ordered to adhere to a court-ordered rehabilitation plan.

In January 1988, R.E. was removed from appellant's care and also placed in the temporary custody of the Department of Social Services. A petition was filed alleging that appellant could not care for R.E. because of appellant's mental illness. At a subsequent adjudication hearing appellant admitted the petition's allegations, and the court found that R.E. was within the meaning of § 43-247(3)(a). The court ordered the Department of Social Services to retain temporary custody of R.E. In a later disposition hearing, the Department of Social Services was ordered to retain custody and appellant was ordered to adhere to a court-ordered rehabilitation plan.

On February 8, 1989, the Douglas County Attorney filed separate petitions to terminate appellant's parental rights to her three children. The petitions alleged, under Neb. Rev. Stat. § 43-292(5) (Reissue 1988), that appellant was unable to discharge her parental responsibilities because of mental illness or mental deficiency. The petitions further alleged that

there are reasonable grounds to believe that such conditions will continue for a prolonged, indeterminate period of time, in that:

A. [The appellant] has been variously diagnosed as suffering from schizophrenia, undifferentiated type, and schizophrenic reaction, paranoid type.

B. In over two years of juvenile court involvement, [the appellant] has remained consistently unable to provide for herself, let alone a small child.

C. The prognosis for [the appellant] is guarded and rather grim; she remains unable to provide for said child well into the foreseeable future.

The hearing on this motion was scheduled for April 19, 1989. On April 11, the county attorney moved for a continuance because a State's witness was unavailable to testify on April 19. The hearing was rescheduled for June 13. On May 30, the court "reluctantly" sustained a motion to continue the June 13 hearing date to some later date. The record does not disclose who moved for the continuance. The hearing was rescheduled for August 10.

On July 28, appellant moved to dismiss the petitions because the hearing scheduled for August 10 was more than 6 months following the filing of the petitions, and such a delay constituted a denial of her constitutional rights as guaranteed by the 5th, 6th, and 14th amendments to the U.S. Constitution and the laws of the State of Nebraska. The court overruled the motions to dismiss.

After a hearing on August 10 and 11, 1989, the trial court found that because of appellant's mental illness or deficiency, and because there were reasonable grounds to believe that such conditions will continue for a prolonged and indeterminate period of time, it was in the best interests of the children that appellant's parental rights be terminated.

On appeal to this court appellant first contends, in sum, that the trial court erred in terminating her parental rights. This court has previously stated that where a parent is unable to discharge parental responsibilities because of mental deficiency, and where there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period, the parental rights may be terminated when such action is found to be in the best interests of the children. *In re Interest of M.M., C.M., and D.M.,* 234 Neb. 839, 452 N.W.2d 753 (1990); *In re Interest of A.M.K.,* 227 Neb. 888, 420 N.W.2d 718 (1988). When a natural parent who suffers from mental deficiency cannot be rehabilitated within a reasonable time, the best interests of the child require that a final disposition be made without delay. *In re Interest of M.M., C.M., and D.M., supra; In re Interest of Farmer,* 210 Neb. 500, 315 N.W.2d 454 (1982). "A child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." *In re Interest of C.N.S. and A.I.S.,* 234 Neb. 406, 410, 451 N.W.2d 275, 278 (1990).

In the present cases, the State called as witnesses two psychiatrists who had previously treated appellant. Both doctors testified at length regarding appellant's mental condition and its effect on her ability to parent. Both doctors diagnosed appellant as having schizophrenia. Dr. Severa, who had treated appellant at the St. Joseph Center for Mental Health for 6 months or more in a 1 1/2-year period, testified that although schizophrenia is treatable, he "didn't see it as very likely that [appellant] would be cured. And I still think her illness will last her whole life, just by my experience with others and by statistics and by her appearance overall." When the county attorney asked Dr. Severa whether, based on a reasonable degree of medical certainty, appellant's illness would continue for a prolonged and undetermined period of time, the doctor replied,

My opinion would be that it would continue for a long period of time, and may have relapses at periods in time depending on the stress in her life, the back-up she has, the psychiatric treatment she has, the support systems like Ivy House or whoever else is involved, and it would be

accentuated if she used any illicit drugs, or was subjected to additional stressors like violence in the home.

He concluded that because of her mental illness, appellant would not be able to care for her children.

Dr. Kenney, who was appellant's psychiatrist during a 3½-month stay at the Norfolk Regional Center, testified that

[t]o recover from this illness, one has to improve to a point where they can enter into some solid, supporting relationships. They have to be able to enter into relationships that will protect them from stress. They have to enter into relationships with people who take on the responsibility of protecting them from the environment. The second thing is that brighter schizophrenics tend to be able to adjust better in the world in such a way as to reduce exhibitions and exacerbations. [The appellant] is limited in intelligence. She tends to be easily exploited and victimized. People enter her life for a reason other than to be supportive of her. The immaturity she displays interferes in her relationships with supportive others that are female. And I just am pessimistic about her ability to make the kind of life-style that would protect her from stress. This is a stress-related illness, it may be genetic in nature, but the ups and downs in it are stress related.

Dr. Kenney further testified that appellant does not have the ability to parent her children and cannot provide for their day-to-day physical, psychological, and emotional needs.

The evidence in the present case establishes by clear and convincing proof that appellant is unable to discharge her parental responsibilities because of mental illness or deficiency and that there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period. The evidence also establishes by clear and convincing proof that termination of appellant's parental rights is in the best interests of the children.

Appellant next argues that "the juvenile court erred in terminating appellant's parental rights by failing to apply fundamentally fair procedures satisfying the requirements of due process required on motions to terminate parental rights." Brief for appellant at 17. The juvenile court admitted into

evidence, over appellant's objections, a probation report and a social services report which contained hearsay statements from various sources regarding appellant's mental and physical condition and the status of appellant's children. Appellant contends the juvenile court violated her due process by receiving these reports when no opportunity for cross-examination existed. She contends that "without the test of cross-examination the reports were unreliable evidence for termination of parental rights." Brief for appellant at 19.

Appellant's contention is without merit. The two reports were admitted into evidence during a review hearing in January 1989. When the State filed the termination petitions in February, it requested the court to take judicial notice of its record in the previous proceedings. At the August termination hearing, the State again requested that the court take notice of its record in the previous proceedings. The court did not respond to either request. The orders entered after the termination hearing tend to indicate that the trial court did not take judicial notice of its record in the previous proceedings. Appellant is in error when she states the trial court used the reports as evidence in the termination proceedings.

In any event, even if we assume the reports were considered as evidence in the termination hearing, and further assume that such consideration violated appellant's due process rights because she was not afforded an opportunity to cross-examine the declarants, there is no error because this court, in its de novo review, did not consider the reports. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 266, 417 N.W.2d 147, 157 (1987): "Because factual questions concerning a judgment or order terminating parental rights are tried by the Supreme Court de novo on the record, impermissible or improper evidence is not considered by the Supreme Court."

Appellant lastly contends the juvenile court erred in denying her motions to dismiss. Appellant contends the petitions must be dismissed because the evidentiary hearing was not held within 6 months of the filing of the petitions, as required by Neb. Rev. Stat. § 43-278 (Reissue 1988). This same contention was recently considered and rejected in *In re Interest of C.P., ante* p. 276, 455 N.W.2d 138 (1990), and it will not be

reconsidered here. Moreover, appellant has failed to show how she was prejudiced by the delay in the adjudication hearing. This contention is without merit.

The orders of the Douglas County Separate Juvenile Court terminating appellant's parental rights are affirmed.

AFFIRMED.