IN RE INTEREST OF BRANDY M. ET AL., CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLANT, V. BRANDY M. ET AL., APPELLEES.

539 N.W.2d 280

Filed October 31, 1995.   Nos. A–94–1212, A–94–1214 through A–94–1222.

James S. Jansen, Douglas County Attorney, and Vernon Daniels for appellant.

Thomas M. Kenney, Douglas County Public Defender, Sarah G. Hemming, and Krista L. Tushar for appellees.

SIEVERS, Chief Judge, and MUES and INBODY, Judges.

MUES, Judge.

## I. INTRODUCTION

The State appeals from 10 separate orders of the Douglas County Separate Juvenile Court dismissing 10 juvenile cases on the basis that said cases were not brought to trial within 6 months of the filing of the individual petitions. Having issues of fact and law in common, the cases were consolidated by stipulation of the parties.

## II. STATEMENT OF CASE

The petitions at issue were filed in the separate juvenile court of Douglas County between April 11 and June 1, 1994. Nine of the 10 petitions alleged jurisdiction over the juveniles pursuant to Neb. Rev. Stat. § 43-247(1), (2), or both (Reissue 1993). One petition alleged jurisdiction under § 43-247(3)(b). Motions for absolute discharge pursuant to Neb. Rev. Stat. §§ 43-271 (Reissue 1993) and 29-1207 and 29-1208 (Reissue 1989) were filed in each of the cases on December 5 or 6. In these motions, it was claimed that the children in interest had not been brought to trial within 6 months as required by statute. A hearing was held on December 7 in which the only evidence adduced was with regard to docket congestion in the Douglas County Separate Juvenile Court. In separate orders dated December 7,

the juvenile judge, without a statement of the factual or legal basis, sustained the motions for absolute discharge and ordered that each of the 10 cases be dismissed.

## III. ASSIGNMENTS OF ERROR

Appellant claims the juvenile court erred in (1) sustaining the motions for absolute discharge on the sole evidentiary ground of a congested docket and (2) failing to apply a balancing test to determine whether an impermissible violation of the right to a speedy trial occurred.

## IV. STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994).

■ Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994); *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994); *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

## V. ANALYSIS

Appellant's first assignment of error presumes that § 43–271 applies to juvenile proceedings such as those involved here. This assignment goes on to contend that the trial judge erroneously based dismissal on the fact that a congested docket precluded more prompt hearings. We are uncertain on what legal or factual grounds the trial judge based these dismissals. We initially presume that the discharges were based on the grounds set forth in appellees' motions. At the outset, the applicability of § 43–271 to these juvenile proceedings appears, to us, questionable. We begin our discussion by explaining this point. However, we note that even if § 43–271 were construed to apply to these proceedings, it would not change the result reached herein.

1. STATUTORY RIGHT TO SPEEDY TRIAL

(a) Juvenile Code
*(i) Application of § 43-271*

Appellees' motions for absolute discharge base their claim on §§ 43-271, 29-1207, and 29-1208. Section 43-271 states:

> A juvenile taken into custody pursuant to sections 43-248, 43-250, and 43-253 shall be brought before the court for adjudication as soon as possible after the petition is filed. On the return of the summons . . . or as soon thereafter as legally may be, the court shall proceed to hear and dispose of the case as provided in section 43-279.
>
> The hearing as to a juvenile in custody of the probation officer or the court shall be held as soon as possible but, in all cases, within a six-month period after the petition is filed, and as to a juvenile not in such custody as soon as practicable but, in all cases, within a six-month period after the petition is filed. The computation of the six-month period provided for in this section shall be made as provided in section 29-1207, as applicable.

When interpreting a statute, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994); *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994); *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

█ Section 43-271 applies, on its face, only to juveniles "taken into custody pursuant to sections 43-248, 43-250, and 43-253." First, Neb. Rev. Stat. § 43-248 (Reissue 1993) provides that in certain situations, a juvenile may be taken into temporary custody by an officer without a warrant or order of the court. Neb. Rev. Stat. § 43-250 (Reissue 1993) gives the officer taking the juvenile into temporary custody four options: The officer may (1) release the juvenile; (2) provide a written notice requiring the juvenile to appear before the juvenile court or probation officer; (3) take and deliver the juvenile to the custody of the juvenile court or probation officer; or (4) deliver

custody of the juvenile to the Department of Social Services, which then provides for placement of the child. Neb. Rev. Stat. § 43–253 (Reissue 1993) further provides instruction when a juvenile is taken into temporary custody pursuant to § 43–248 and option No. 3, pursuant to § 43–250, is chosen, i.e., the juvenile is delivered to the juvenile court or probation officer. Section 43–253 provides that the court or probation officer may immediately release the juvenile, admit the juvenile to bail by bond, or provide for placement or detention of the juvenile.

The second paragraph of § 43–271 divides those juveniles taken into temporary custody into two groups, those remaining in the custody of the court or probation officer and those not remaining in said custody. Section 43–271 further provides that for both groups, a hearing must be held as soon as possible or practicable, but in all cases, within 6 months after the petition is filed.

■ The language of § 43–271 is plain and unambiguous. It applies only to those juveniles entering the juvenile court system through the temporary custody process set forth in § 43–248. Even if § 43–271 could be construed as ambiguous, the maxim "expressio unius est exclusio alterius" is applicable here. " '[W]here a statute or ordinance enumerates the things upon which it is to operate . . . it is to be construed as excluding from its effect all those not expressly mentioned, unless the legislative body has plainly indicated a contrary purpose or intention.' " *Nebraska City Education Assn. v. School Dist. of Nebraska City*, 201 Neb. 303, 306, 267 N.W.2d 530, 532 (1978).

Our interpretation is further supported by examining the previous version of the Nebraska Juvenile Code, Neb. Rev. Stat. § 43–245 et seq. (Reissue 1988). Section 43–271 in its current version is identical to the version of that section contained in the previous code. However, in the previous code, § 43–278 restated the second paragraph of § 43–271 without limiting its application to juveniles entering the system through the temporary custody process set forth in § 43–248. Through amendment, this language was omitted from § 43–278, the current version expressly speaking only to cases filed under § 43–247(3) and providing for a hearing to take place within 90

days. (The one petition filed pursuant to § 43–247(3)(b) is addressed later in this discussion.)

Not every juvenile entering the juvenile system begins by being taken into temporary custody pursuant to § 43–248. In these cases, it does not appear from the records that any of the juveniles at issue were taken into temporary custody pursuant to § 43–248. Without such a showing, § 43–271 is not applicable. We find no other provision in the code providing for the right to a trial in 6 months. In fact, we find no statutory time limit applicable to those juveniles not entering the system pursuant to § 43–248 and not subject to the court's jurisdiction under § 43–247(3).

We can conceive of no logical reason to impose a 6–month time limit on one type of juvenile proceeding (those initiated by the taking of temporary custody pursuant to § 43–248), a 90–day limit on another (those initiated under § 43–247(3)), and no time limit on others (those not filed under § 43–247(3) and not initiated by the temporary custody procedure set forth in § 43–248). Yet, we have no authority to interpret a statute that is plain and unambiguous, and it is not our province to change the language. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

We are aware of Neb. Rev. Stat. § 43–279(1)(f) (Reissue 1993), requiring the court to inform certain juveniles of the right to a speedy adjudication. However, as will be discussed below, without further legislative direction as to a proper time period or remedy for failure to provide a speedy trial, this provision does not authorize a juvenile judge to dismiss cases not brought to trial within 6 months.

■ Even if we were to find § 43–271 applicable to these juveniles, the effect of the language found in § 43–279(1)(f) and the second paragraph of § 43–271 has already been determined. In *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990), the Supreme Court, interpreting language identical to that found in §§ 43–271 and 43–279(1)(f), decided that because the Legislature failed to specify a consequence for the failure to provide a trial within 6 months, said 6–month limit was merely directory rather than mandatory. The court in *In re Interest of C.P.* relied upon the rule that a provision of a statute not relating

to the essence of the thing to be done but governing the time or manner of performance is generally considered to be directory as opposed to mandatory. The court went on to indicate that absent a showing of prejudice, failure to comply with the 6-month time period found in § 43-271 does not require dismissal of a juvenile case involving the termination of parental rights. This, the court reasoned, was necessary given the Legislature's failure to provide a remedy and the purpose to be served by a parental rights termination proceeding, that is, to provide for the best interests of the juvenile. See, also, *In re Interest of T.E., S.E., and R.E.*, 235 Neb. 420, 455 N.W.2d 562 (1990).

Although the juvenile cases currently at issue do not involve the termination of parental rights, the reasoning in *In re Interest of C.P.* is applicable. First, the language interpreted in *In re Interest of C.P.* is identical to that in the second paragraph of § 43-271, upon which appellees base their right to discharge, and § 43-279(1)(f). Additionally, since the court's decision in *In re Interest of C.P.*, the Legislature has amended the juvenile code. See Neb. Rev. Stat. § 43-278 (Reissue 1993). The current version of the code still contains no remedy for the court's failure to try specified juvenile cases within a prescribed period. Generally, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of its intent. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994). When the Legislature amended the juvenile code, it was presumably aware of the court's decision in *In re Interest of C.P.*; however, it did not respond by making the time limit mandatory rather than directory. Therefore, even if § 43-271 could be construed to apply to these cases, absent a showing of prejudice, failure to comply with its 6-month provision does not require dismissal. No prejudice was shown in the present cases.

### (ii) § 43-247(3)(b) Petition

One of the juvenile petitions at issue was filed pursuant to § 43-247(3)(b). Section 43-278, as amended, provides in relevant part: "All cases filed under subdivision (3) of section 43-247 shall have an adjudication hearing not more than ninety

days after a petition is filed." Therefore, although not subject to a 6–month provision, this (3)(b) petition is subject to a 90–day limit. Applying the same rationale as above, however, absent a legislative remedy, this 90–day provision is also directory rather than mandatory. Again, we assume the amended version of § 43–278 was drafted with the knowledge of *In re Interest of C.P., supra.* Accordingly, the fact that one petition was filed pursuant to § 43–247(3), therefore subjecting it to a statutorily imposed time limit, does not authorize its dismissal by the juvenile court judge, absent a showing of prejudice. See, also, *In re Armour*, 59 Ill. 2d 102, 319 N.E.2d 496 (1974) (use of word "shall" in providing for setting of juvenile hearing within 30 days is directory rather than mandatory, as court noted that society's interest in juvenile's welfare could not always be served by mechanical adherence to formula).

Accordingly, the juvenile code provides no authority upon which a judge may rely to dismiss cases like any of those at issue.

### (b) Criminal Code

Appellees arguably recognized the absence of a remedy in the juvenile code, as their motions for absolute discharge attempt to incorporate the dismissal remedy provided in the criminal speedy trial provisions.

Section 29–1207 provides the method for computing the 6–month period and excludes various time periods, including any period of delay that a court determines to be for "good cause." § 29–1207(4)(f). Further, § 29–1208 states: "If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense."

Despite the reference in § 43–271 to § 29–1207, it has already been determined in Nebraska that Neb. Rev. Stat. §§ 29–1205 to 29–1209 (Reissue 1989) apply only to criminal proceedings. See *In re Interest of C.P., supra* (§§ 29–1205 to 29–1209 not applicable to proceeding to terminate parental rights, as such proceeding is not criminal in nature).

The Nebraska Supreme Court has recognized that in fact, all

juvenile proceedings are civil rather than criminal in nature. See *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989).

"The purpose of our statutes relating to the handling of youthful offenders is, as in other states having juvenile court systems, the education, treatment and rehabilitation of the child, rather than retributive punishment. The emphasis on training and rehabilitation, rather than punishment, is underscored by the declaration that juvenile proceedings are civil, rather than criminal, in nature. Instead of a complaint or indictment we have a 'petition.' The hearing never results in a conviction, but may lead to an 'adjudication of delinquency.' Where confinement of the delinquent child is indicated as the proper treatment, the child is not sentenced to prison but, instead, is 'committed' to a 'training school.' The adjudication of delinquency does not carry with it any of the civil disabilities ordinarily resulting from conviction of crime, nor is the child considered to be a criminal because of such adjudication."

*Id.* at 614, 447 N.W.2d at 43 (quoting *Smith v. State*, 444 S.W.2d 941 (Tex. Civ. App. 1969)). See, also, *State v. Jones*, 521 N.W.2d 662 (S.D. 1994) (criminal procedure rules including right to speedy trial do not apply to juvenile proceedings because of different purpose served by juvenile system); *Robinson v. State*, 707 S.W.2d 47 (Tex. Crim. App. 1986) (provisions of criminal code including speedy trial act do not apply until juvenile is transferred to criminal court); *In re M.A.*, 132 Ill. App. 3d 444, 477 N.E.2d 27 (1985) (criminal speedy trial act not applicable to juvenile court proceedings; only juvenile law applies to juvenile offenders until court authorizes criminal prosecution); *In Interest of C. T. F.*, 316 N.W.2d 865 (Iowa 1982) (criminal statutory right to speedy trial not applicable in juvenile proceedings); *State v. Myers*, 116 Ariz. 453, 569 P.2d 1351 (1977); *R.D.S.M. v. Intake Officer*, 565 P.2d 855 (Alaska 1977).

Neb. Rev. Stat. § 43–276 (Reissue 1993) further points out the distinction between criminal and juvenile proceedings by requiring the county attorney, when there is concurrent jurisdiction, to choose between filing a criminal charge or a

juvenile court petition. Application of § 29-1208 to criminal proceedings only is further reinforced by that section's application only to "defendants," a term not used in juvenile court proceedings. Therefore, the juvenile court judge had no authority to dismiss these cases pursuant to §§ 29-1205 to 29-1209, as these criminal speedy trial provisions do not apply to juvenile proceedings.

Based on the aforementioned reasons, it is unnecessary to determine whether docket congestion constitutes good cause within the meaning of § 29-1207. Having determined the dismissal of these juvenile proceedings, if based on statutory grounds, is improper, we must reverse the juvenile court judge's orders unless we can find other grounds to uphold them. Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994); *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993).

## 2. Constitutional Grounds

■ " 'The constitutional right to a speedy trial and the statutory implementation of that right . . . exist independently of each other. . . .' " *State v. Trammel*, 240 Neb. 724, 728, 484 N.W.2d 263, 267 (1992) (quoting *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989)). To determine whether one's constitutional right to a speedy trial has been violated, courts employ a balancing test. See, e.g., *Andersen, supra* (citing *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

Although we fail to understand appellant's second assignment of error because neither the court nor appellees make any reference to the constitutional right to a speedy trial, appellant insists that the court erred by failing to conduct a balancing test.

First, we note that this argument presumes that juveniles possess a constitutional right to a speedy trial, an issue not specifically ruled upon by the Nebraska Supreme Court or the U.S. Supreme Court. Assuming, without deciding, that

juveniles have a constitutional right to a speedy trial, the circumstances of these cases do not warrant a determination that appellees' rights were violated here.

The Nebraska Supreme Court has indicated that when determining if an individual's constitutional right to a speedy trial has been violated, it is necessary to apply a balancing test. See, e.g., *Andersen, supra* (criminal proceeding). "This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *Id.* at 196, 440 N.W.2d at 211 (citing *Barker, supra*). Those same factors would naturally be considered in determining whether a juvenile's constitutional right to a speedy trial has been violated. See *In Interest of C. T. F.*, 316 N.W.2d 865 (Iowa 1982) (court applies *Barker* four-part balancing test to determine whether juvenile's constitutional right to speedy trial violated).

Even if we were to assume that juveniles possess a constitutional right to a speedy trial, application of this balancing test favors appellant rather than the juveniles now before the court. The petitions at issue were filed between April 11 and June 1, 1994. All were dismissed by orders dated December 7. The period of delay beyond 6 months and up to the date of dismissal of these petitions is minimal, ranging from 6 days to just under 2 months. Evidence was adduced attributing this delay to docket congestion. No evidence was presented regarding prejudice to the juveniles by virtue of the delay. Deprivation of the constitutional right to a speedy trial is not per se prejudicial. *Andersen, supra.* Thus, even if we were to determine that juveniles have a constitutional right to a speedy trial, the facts of these cases indicate a short delay caused by docket congestion and no prejudice resulting to these juveniles.

## VI. CONCLUSION

The juvenile court erred by dismissing 10 separate juvenile court petitions on the basis that they had not been tried within 6 months. No 6-month speedy trial provision exists in the juvenile code applicable to these juveniles, as § 43-271 applies on its face only to youths taken into temporary custody without a warrant or court order. Even if § 43-271 could be construed

to apply, because of the purpose served by the juvenile court system and because the Legislature has failed to provide a remedy for missing the 6-month deadline, the language of § 43–271 is directory rather than mandatory. Likewise, the 90–day time limit imposed upon the § 43–247(3)(b) petition filed herein, absent a legislative remedy, is directory rather than mandatory. Therefore, absent a showing of prejudice, dismissal is improper. Further, given the civil nature of juvenile proceedings, it is also improper to apply the criminal speedy trial statutory provisions. Finally, even if we were to determine that juveniles have a constitutional right to a speedy trial, the facts of these cases indicate short delays caused by docket congestion and no prejudice resulting to these juveniles.

REVERSED.