In re INTEREST OF LISA O., A CHILD UNDER 18 YEARS OF AGE. KEITH COUNTY, NEBRASKA, APPELLEE, V. DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

540 N.W.2d 109

Filed December 1, 1995. No. S-93-1047.

Don Stenberg, Attorney General, Royce N. Harper, and Lisa G.T. Swinton for appellant.

Deborah R. Gilg, Keith County Attorney, and Jeffrey M. Eastman for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

The Nebraska Department of Social Services (DSS) appeals from an October 27, 1993, judgment of the Keith County District Court which affirmed a July 8 order of the juvenile division of the Keith County Court directing DSS to pay the detention costs for Lisa O., a minor child. These costs were incurred while Lisa was temporarily held at the Panhandle Youth Detention Center from November 26 to 30, 1992. For the reasons stated below, we conclude that the district court was correct and, accordingly, affirm the judgment.

## FACTS

In August 1990, the juvenile division of the Keith County Court adjudicated Lisa as a child who is in a situation injurious to the health or morals of herself under Neb. Rev. Stat. § 43–247(3)(a) and (b) (Reissue 1993) and placed her in the temporary custody of DSS pending disposition. As part of its disposition, on December 4, 1990, the juvenile court placed Lisa in the care and custody of DSS for appropriate placement. DSS has retained the care and custody of Lisa at all times since this December 4 order.

Lisa has frequently run away from her various DSS treatment and foster care placements. In 1992, just prior to the beginning of the Thanksgiving holiday, Lisa ran away from her placement in Norfolk, Nebraska. On November 24, before Lisa was located and apprehended, Lisa's DSS case manager contacted the Keith County Attorney to advise the county attorney of the situation and to discuss possible weekend placements in the event Lisa was found before the Thanksgiving weekend.

During this telephone conversation, the case manager suggested that if Lisa is found, she could be placed in a foster home with 24-hour supervision. The county attorney suggested that in light of Lisa's propensity to run away, she should be placed in a more secure setting. The case manager thought placement in the Wayne Detention Center could provide the needed security for the minor child. The county attorney instead offered to draft an order for the juvenile court, placing Lisa in the Panhandle Youth Detention Center at Gering, Nebraska, in the event she was located. In addition, the county attorney insisted DSS was to be the transporting agency. Payment of the cost for Lisa's temporary detention was never discussed.

The county attorney drafted an order which was signed by the clerk magistrate of Keith County and filed in the county court on November 24, 1992, directing that Lisa be transported by an agent of DSS to the Panhandle Youth Detention Center for placement until a review hearing could be scheduled in the juvenile court following the Thanksgiving weekend. The Norfolk Police Department found Lisa at approximately 4 a.m. on Thanksgiving morning, November 26. DSS made the necessary arrangements and transported Lisa to the Panhandle Youth Detention Center, where Lisa remained until November 30. A hearing was held on November 30 in the juvenile court, where an order continuing Lisa's care and custody in DSS was issued.

On December 12, 1992, Keith County filed a motion in the juvenile court requesting the court to direct DSS to pay the amount due to the Panhandle Youth Detention Center for Lisa's temporary detention. After notice and hearing, the juvenile court entered an order directing DSS to pay the costs in dispute, the sum total of $566.60. In its order, the court found that Lisa's detention was necessary to prevent Lisa from harming herself, that Lisa's acts were not criminal in nature but based upon her mental health, and that DSS had been and continues to be responsible for the care and custody of Lisa, including her mental health needs. DSS appealed the entry of this order to the district court. The district court, finding no error, affirmed the juvenile court's order, and this appeal followed.

## ASSIGNMENTS OF ERROR

DSS essentially argues that the district court erred in affirming the order of the juvenile court assessing the costs of Lisa's detention to DSS, because detention costs are not the statutory responsibility of DSS pursuant to Neb. Rev. Stat. § 43-290 (Reissue 1993). Secondly, DSS asserts that because Lisa's detention was ordered by the county attorney, the responsibility for payment is with Keith County under the authority of Neb. Rev. Stat. §§ 29-1001 and 29-1004 (Reissue 1989).

## STANDARD OF REVIEW

The issue in this case is solely one of statutory interpretation. Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, ante p. 518, 537 N.W.2d 312 (1995); *Sylvis v. Walling*, ante p. 168, 532 N.W.2d 312 (1995); *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995).

## ANALYSIS

The facts in this case, or even the inferences to be drawn from the facts, are not in dispute. Both parties agree that the issue in this case involves the statutory interpretation of § 43-290, which reads, in pertinent part:

> [W]henever the care or custody of a juvenile is given by the court to someone other than his or her parent, which shall include placement with a state agency, or when a juvenile is given medical, psychological, or psychiatric study or treatment under order of the court, the court shall make a determination of support to be paid by a parent for the juvenile at the same proceeding at which placement, study, or treatment is determined or at a separate proceeding. . . .
>
> At such proceeding . . . the court may order and decree that the parent shall pay, in such manner as the court may direct, a reasonable sum that will cover in whole or part the support, study, and treatment of the juvenile, which

amount ordered paid shall be the extent of the liability of the parent. The court in making such order shall give due regard to the cost of study, treatment, and maintenance of the juvenile, the ability of the parent to pay, and the availability of money for the support of the juvenile from previous judicial decrees, social security benefits, veterans benefits, or other sources. . . .

. . . .

*If the juvenile has been committed to the care and custody of the Department of Social Services, the department shall pay the costs for the support, study, or treatment of the juvenile which are not otherwise paid by the juvenile's parent.*

(Emphasis supplied.)

DSS asserts that § 43-290 cannot be read so broadly as to require DSS to pay any and all costs associated with a juvenile in its care and custody. Accordingly, DSS argues that § 43-290 cannot be construed to include detention as a cost which devolves to DSS, since detention is not specifically referenced in the statute.

In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994).

The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Application of City of Grand Island*, 247 Neb. 446, 527 N.W.2d 864 (1995); *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

TEMPORARY DETENTION AS TREATMENT

In support of its position, DSS urges us to examine the

Nebraska Juvenile Code and other statutes which address detention costs to see how the Legislature has allocated the payment for detention costs in other circumstances. Presumably, such an examination would help us determine if the Legislature intended to have DSS pay this type of detention cost under the provisions of § 43–290. In actuality, we are required to determine if the temporary detention of a wayward juvenile is considered "treatment" of the juvenile as that term is used in § 43–290. The fact of the matter is that once a juvenile has been committed to the care and custody of DSS, then if temporary detention of a wayward juvenile is considered a part of "treatment" of the juvenile, DSS is *mandated* by statute to pay the costs of the detention which are not otherwise paid by the juvenile's parent. Where statutory words are plain, direct, and unambiguous, it does not matter how the Legislature has allocated the payment for detention costs in other circumstances or under other statutory schemes.

The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990). Moreover, the juvenile code must be construed to assure the rights of all juveniles to care and protection. Neb. Rev. Stat. § 43–246 (Reissue 1993).

"Treatment" is defined as meaning "preventive guidance and corrective training esp. of juvenile delinquents and youthful criminal offenders . . . ." Webster's Third New International Dictionary, Unabridged 2435 (1993). The temporary confinement of Lisa in a juvenile detention center over the Thanksgiving weekend was, in fact, the exact type of *treatment* that was necessary for her guidance and safekeeping until the juvenile court had an opportunity to review the circumstances on Monday, November 30, 1992. The plain meaning of the phrase "support, study, [and] treatment" within the context of § 43–290 is that these are words of inclusion, not words of exclusion. Under these circumstances, a temporary detention which effects the *treatment* of a wayward juvenile equates to assuring the right of the juvenile to the provision of care and protection. When a juvenile is committed to the care and custody of DSS, and temporary detention results for the

protection of the child or is found to be in the best interests of the juvenile's physical or mental health needs, we hold that type of detention is, in fact, "treatment" of the juvenile as that term is used in § 43-290.

### ASSESSMENT OF DETENTION COSTS

In addition, the clear focus of § 43-290 is to identify the party responsible for the provision of the support, study, and treatment of the juvenile. Section 43-290 explicitly delegates to DSS the costs for the support, study, or treatment of a juvenile in its care and custody which are not otherwise paid by the juvenile's parent. Lisa has been in the care, custody, and control of DSS since December 1990. This disposition did not change during the 5-day period when she was detained in the Panhandle Youth Detention Center.

In addition, it was DSS who first suggested to the Keith County Attorney that if Lisa should be located, she could be detained in a secure facility, the Wayne Detention Center. When the county attorney resisted this suggestion and countered with her own offer to draft an order to detain Lisa at the Panhandle Youth Detention Center, DSS either acquiesced or at least did not voice any concern as to who would pay the costs of detention. Moreover, DSS agreed to transport Lisa to the Panhandle Youth Detention Center should she be found. If DSS had any reservations about Lisa's placement in the Gering facility or payment of the detention costs, it should have protested prior to transporting Lisa to the Panhandle Youth Detention Center or, at the very latest, at the November 30, 1992, hearing in juvenile court, instead of waiting until after the bill for detention costs had arrived.

As its second assignment of error, DSS argues that any county-ordered detention should be considered an expense within the local administration of justice, and such expenses are the responsibility of the individual county. In support, DSS cited provisions of the criminal code and offered the proposition that since Lisa was detained pursuant to a court order, she was therefore a prisoner and that §§ 29-1001 and 29-1004 require the cost for confinement of prisoners to be paid by the county.

The law in this state is clear that a juvenile offender is not

similarly situated as an adult criminal offender. That is so because a juvenile offender is ordinarily committed to a public institution to effect treatment or rehabilitation, and not for the purpose of punishment. See *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989). Moreover, there is even less reason to treat a status offender like Lisa similarly to an adult offender, as Lisa was not a criminal offender in any sense of the word. Lisa was a child in need of help and treatment at the time of her detention. The State of Nebraska has never treated prisoners confined for punishment and those juveniles who must regrettably be confined for their own good in the same manner.

Thus, the cost of detention under these circumstances is a cost which should devolve to DSS when a juvenile is committed to its care and custody. It is clear from our holding that the temporary detention of Lisa was to effect her treatment. Therefore, the cost of her detention is properly assessed to DSS.

## CONCLUSION

The argument of DSS that it is not obligated to pay for the care of Lisa for the 5–day period in which she was confined in the Panhandle Youth Detention Center is without merit. The plain statutory language of § 43–290 compels the conclusion that when a juvenile is committed to DSS' care and custody, DSS is required to pay the costs for the support, study, or treatment that is in the best interests of the child which are not otherwise paid by the juvenile's parent. If temporary detention is necessary to effect the child's treatment, then detention is a cost which must be borne by DSS. The judgment of the district court is affirmed.

AFFIRMED.