IN RE INTEREST OF ARCHIE C., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ARCHIE C. AND FRIEDA C., APPELLEES, AND NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

547 N.W.2d 913

Filed May 24, 1996. No. S-95-638.

Don Stenberg, Attorney General, Royce N. Harper, and Shawn Elliott, Special Assistant Attorney General, for appellant.

Jeffrey A. Wagner and Christopher Kelly for appellees Archie C. and Frieda C.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.
The separate juvenile court of Douglas County placed the subject juvenile, Archie C., in the custody of the Department of Social Services (DSS). Upon the juvenile court's overruling of DSS' motions for a new trial and for a vacation of that custody order, DSS appealed to the Nebraska Court of Appeals. We subsequently removed the matter to our docket.

Then Deputy County Attorney Elizabeth G. Crnkovich filed a petition alleging that the subject juvenile had killed Jennifer Martin and that he thus, under the provisions of Neb. Rev. Stat. § 43-247(2) (Reissue 1993), was subject to the jurisdiction of the juvenile court as a juvenile who had committed a felonious act. Thereafter, the juvenile court, through Juvenile Court Judge Joseph W. Moylan, committed the juvenile to the care of the Department of Public Institutions, which placed him in the Lincoln Regional Center. Deputy Crnkovich participated in the hearings resulting in the aforesaid adjudication and disposition.

Later, Deputy County Attorney Ray W. Daniel filed another petition, alleging that the juvenile was now in need of supervision as a juvenile who was "homeless or destitute, or without proper support through no fault" of his mother, Frieda C., and thus fell within the ambit of § 43-247(3)(a). In addition, Deputy Daniel filed a motion for temporary custody which Juvenile Court Judge Donald J. Hamilton granted, placing temporary custody of the juvenile in DSS. Deputy Daniel subsequently filed a motion to rescind that order. Recognizing that there was then no need for placing custody of the juvenile with DSS, as the juvenile was at the regional center, Judge Hamilton granted this motion.

During this same time period, Deputies Crnkovich and Daniel both participated in meetings with DSS officials to discuss future placement options for the juvenile. DSS made it known at those meetings that it opposed having the juvenile committed to its care, as DSS thought its programs did not fit the juvenile's needs.

A pretrial conference was subsequently held, during which a joint motion for a continuance to make further applications for appropriate placement was granted by Judge Hamilton.

By the time the matter again came up for a pretrial hearing, Deputy Crnkovich had become Juvenile Court Judge Crnkovich. Neither DSS nor the Department of Public Institutions was a party to this proceeding. Because of the unavailability of Judge Hamilton, Judge Crnkovich presided. Judge Crnkovich began the proceeding by informing the guardian ad litem and counsel for the juvenile's mother of

Judge Crnkovich's prior involvement in the case. Both parties expressly waived any conflicts presented by Judge Crnkovich's participation in this specific proceeding. Judge Crnkovich did not directly ask Deputy Daniel whether the State consented to her participation, but he neither objected nor otherwise spoke to the matter.

Judge Crnkovich thereafter ordered the juvenile placed in the temporary custody of DSS. DSS then filed the motions described earlier. Before these motions were decided, Judge Crnkovich entered an order on her own motion, transferring all future hearings to the judge to whom the matter had been originally assigned or another juvenile court judge.

Judge Hamilton then overruled DSS' motions and ordered that the juvenile remain in the custody of DSS.

DSS assigns the overruling of its motions as error, urging that the participation of Judge Crnkovich in the pretrial hearing prevented a fair trial. As a matter controlled by statute, this appeal presents a question of law, in connection with which an appellate court is obligated to reach an independent conclusion irrespective of the determination made by the court below. *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

Before one is entitled to invoke a court's jurisdiction, one must have standing to sue, which involves having some real interest in the cause of action; in other words, to have standing to sue, one must have some legal or equitable right, title, or interest in the subject matter of the controversy. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). The purpose of a standing inquiry is to determine whether one has a legally protected interest or right in the controversy that would benefit by the relief to be granted. *Id.*

Neb. Rev. Stat. § 43-285(4) (Reissue 1993) provides:

When the court awards a juvenile to the care of the [Department of Social Services] then the department . . . shall have standing as a party to file any pleading or motion, to be heard by the court with regard to such fil-

ings, and to be granted any review or relief requested in such filings consistent with the Nebraska Juvenile Code. Thus, under the terms of the foregoing statute, DSS acquires standing only after a juvenile has been placed in its care. At the time of the pretrial hearing at which Judge Crnkovich presided, the juvenile had not yet been ordered to the care and custody of DSS. As a consequence, DSS lacks standing to contest Judge Crnkovich's custody order. It is true that DSS' motions were filed after the entry of Judge Crnkovich's custody order, but they related to matters which had occurred prior to the entry of that order.

This appeal must therefore be dismissed.

APPEAL DISMISSED.