IN RE INTEREST OF BRANDY M. ET AL., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V. BRANDY M. ET AL.,
APPELLEES.

550 N.W.2d 17

Filed July 5, 1996.    Nos. S-94-1212, S-94-1214 through S-94-1222.

James S. Jansen and Vernon Daniels for appellant.

Thomas M. Kenney, Douglas County Public Defender, Krista L. Tushar, and Sarah G. Hemming for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

## I. INTRODUCTION

On December 7, 1994, the separate juvenile court sustained the motions for absolute discharge filed in 10 separate juvenile cases. Each motion was predicated upon the juveniles' statutory right to a prompt adjudication hearing pursuant to Neb. Rev. Stat. §§ 43-271 and 43-278 (Reissue 1993). In an opinion designated for permanent publication, the Nebraska Court of Appeals reversed the juvenile court, holding § 43-271 applied only to juveniles taken into custody pursuant to Neb. Rev. Stat. §§ 43-248, 43-250, and 43-253 (Reissue 1993), and, in any event, the Nebraska Juvenile Code provides no authority for a judge to dismiss a petition absent a showing of prejudice by the juvenile. *In re Interest of Brandy M. et al.*, 4 Neb. App. 115, 539 N.W.2d 280 (1995). It is from this decision that the juveniles have successfully sought further review. We now reverse the judgment of the Court of Appeals.

## II. FACTUAL BACKGROUND

On December 5 and 6, 1994, 10 separate motions for absolute discharge were filed concerning juveniles who had not been brought before the juvenile court for an adjudication hearing within 6 months of the filing of their petitions. In each case, counsel for the child in interest did not request a continuance or file any pretrial motions within a 6-month period from the date the petition was filed. The parties stipulated to consolidation of the cases, as each case concerned the same issues of fact and law. The specific facts of each petition are as follows:

1. *In re Interest of Brandy M.*, case No. S-94-1212. The petition, filed June 1, 1994, alleged three counts pursuant to Neb. Rev. Stat. § 43-247(3)(b) (Reissue 1993): a wayward and disobedient child in need of supervision. A denial was entered on behalf of the child on July 6. An adjudication hearing was set for December 22. Motion for absolute discharge was filed December 6.

2. *In re Interest of James D.*, case No. S-94-1214. The petition, filed May 6, 1994, alleged six counts pursuant to § 43-247(1) and (2): commission of an act by a juvenile which would constitute a misdemeanor or infraction and commission of an act by a juvenile which would constitute a felony. James D. was charged with four counts of receiving stolen property and two counts of destruction of property. A denial was entered on behalf of the child on July 19. This case was never set for adjudication. Motion for absolute discharge was filed December 6.

3. *In re Interest of Thomas S.*, case No. S-94-1215. The petition, filed May 2, 1994, alleged two counts pursuant to § 43-247(1): commission of an act by a juvenile which would constitute a misdemeanor or infraction. Thomas S. was charged with trespassing and obstruction. A denial was entered on behalf of the child on July 6. This case was set for adjudication on December 22. Motion for absolute discharge was filed December 6.

4. *In re Interest of Stephanie P.*, case No. S-94-1216. The petition, filed April 22, 1994, alleged two counts pursuant to § 43-247(1) and (2): commission of an act by a juvenile which

would constitute a misdemeanor or infraction and commission of an act by a juvenile which would constitute a felony. Stephanie P. was charged with receiving stolen property and obstruction. A denial was entered on behalf of the child on July 6. This case was set for adjudication on December 12. Motion for absolute discharge was filed December 6.

5. *In re Interest of Arthur H.*, case No. S-94-1217. The petition, filed April 22, 1994, alleged one count pursuant to § 43-247(2): commission of an act by a juvenile which would constitute a felony. Arthur H. was charged with first degree assault. A denial was entered on behalf of the child on June 28. This case was set for adjudication on December 21. Motion for absolute discharge was filed December 5.

6. *In re Interest of Vincent P.*, case No. S-94-1218. The petition, filed April 19, 1994, alleged two counts pursuant to § 43-247(1): commission of an act by a juvenile which would constitute a misdemeanor or infraction. Vincent P. was charged with violation of the Omaha Municipal Code, refusing to leave property, and being an annoyance. A denial was entered on behalf of the child on June 28. This case was set for adjudication on December 21. Motion for absolute discharge was filed December 6.

7. *In re Interest of Jerry G.*, case No. S-94-1219. The petition, filed April 18, 1994, alleged two counts pursuant to § 43-247(1): commission of an act by a juvenile which would constitute a misdemeanor or infraction. Jerry G. was charged with third degree assault. A denial was entered on behalf of the child on June 21. This case was set for adjudication on December 16. Motion for absolute discharge was filed December 5.

8. *In re Interest of George M.*, case No. S-94-1220. The petition, filed April 13, 1994, alleged one count pursuant to § 43-247(2): commission of an act by a juvenile which would constitute a felony. George M. was charged with criminal mischief. A denial was entered on behalf of the child on June 21. This case was set for adjudication on December 13. Motion for absolute discharge was filed December 5.

9. *In re Interest of David C.*, case No. S-94-1221. The petition, filed April 13, 1994, alleged two counts pursuant to

§ 43-247(1): commission of an act by a juvenile which would constitute a misdemeanor or infraction. David C. was charged with carrying a concealed weapon and with violation of a municipal ordinance, being an annoyance. A denial was entered on behalf of the child on June 21. This case was set for adjudication on December 19. Motion for absolute discharge was filed December 6.

10. *In re Interest of Joe C.*, case No. S-94-1222. The petition, filed April 11, 1994, alleged one count pursuant to § 43-247(1): commission of an act by a juvenile which would constitute a misdemeanor or infraction. Joe C. was charged with shoplifting. A denial was entered on behalf of the child on June 7. This case was set for adjudication on December 13. Motion for absolute discharge was filed December 5.

### 1. PROCEEDINGS IN JUVENILE COURT

On December 7, 1994, a hearing was held in the juvenile court on the juveniles' motions for absolute discharge. Counsel for the juveniles argued the motion, but did not offer any evidence in support thereof. The State called two witnesses who testified generally about the crowded docket and lack of judicial resources, at that time, in the Douglas County Separate Juvenile Court. The testimony will be discussed more extensively in the analysis portion of this opinion.

The gist of the juveniles' argument was that § 43-271 required the State to bring a juvenile to an adjudication hearing within 6 months of the filing of a petition. In addition, because § 43-271 specifically incorporated the speedy trial right found in the criminal rules of procedure, Neb. Rev. Stat. § 29-1207 (Reissue 1995), if the State failed in its statutory obligation to adjudicate a child within 6 months of the filing of the petition, absolute discharge was mandated.

The State argued that juvenile adjudications are not criminal prosecutions; thus § 29-1207 should not be read so broadly as to compel the absolute discharge of these juveniles. Moreover, § 29-1207(4)(f) allows the speedy trial time period to toll if the court finds that there is good cause, and the current crowded docket in the juvenile court constitutes good cause.

After hearing evidence and argument by counsel, the juvenile court granted the motions and discharged all 10 cases. The juvenile court found that § 43-271 required the State to bring all juveniles before the court for adjudication as soon as possible, but, in all cases, within a 6-month period after the petition is filed. If the 6-month period has passed between the filing of a petition and an adjudication hearing, § 43-271 refers the court to the rules of criminal procedure, and, absent sufficient cause for the delay, the juvenile court found that an absolute discharge from the petition is statutorily mandated.

## 2. DECISION OF COURT OF APPEALS

The Court of Appeals reversed the orders of the juvenile court finding that "[t]he language of § 43-271 is plain and unambiguous. It applies only to those juveniles entering the juvenile court system through the temporary custody process set forth in § 43-248." *In re Interest of Brandy M. et al.*, 4 Neb. App. 115, 119, 539 N.W.2d 280, 283 (1995). The record before the court did not indicate that any of the juveniles involved in the cases on appeal had at one time, without the issuance of a warrant, been in the temporary custody of an officer of the peace pursuant to § 43-248. Accordingly, the juveniles did not have a statutory right to adjudication within 6 months.

Moreover, the Court of Appeals found that even if there were a statutory speedy trial right applicable to the cases filed pursuant to § 43-247(1) and (2), because the Legislature failed to specify a consequence for the failure to provide a trial within 6 months, the 6-month time limit was merely directory rather than mandatory. Thus, for a juvenile to have his or her petition dismissed, he or she must show prejudice.

The Court of Appeals did note that of the 10 cases involved in the instant appeal, 1 case was filed pursuant to § 43-247(3)(b) and that § 43-278 provided this juvenile with a statutory right to an adjudication hearing within 90 days. However, the Court of Appeals found the use of the word "shall" in § 43-278 was likewise directory. Accordingly, this juvenile must demonstrate prejudice in order to obtain an absolute discharge.

## III. ASSIGNMENTS OF ERROR

The juveniles contend that the Court of Appeals erred in the following two respects: (1) in construing § 43-271 so as to deny a statutory right to a prompt adjudication hearing for juveniles who do not first enter the system through temporary custody by an officer of the peace and (2) in holding that, in any event, a juvenile must demonstrate prejudice in order to receive discharge when the State has failed to comply with the statutory mandate of a prompt adjudication hearing found in §§ 43-271 and 43-278.

## IV. ANALYSIS

### 1. CONSTRUCTION OF §§ 43-271 AND 43-278

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Archie C., ante* p. 123, 547 N.W.2d 913 (1996); *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995). In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995); *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994). A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996); *Chrysler Corp. v. Lee Janssen Motor Co.*, 248 Neb. 281, 534 N.W.2d 568 (1995).

Section 43-271, titled "Prompt hearing and disposition," provides:

> A juvenile taken into custody pursuant to sections 43-248, 43-250, and 43-253 shall be brought before the court for adjudication as soon as possible after the petition is filed. On the return of the summons or other process, or mailing of the notice in lieu of summons, or as soon thereafter as legally may be, the court shall pro-

ceed to hear and dispose of the case as provided in section 43-279.

> The hearing as to a juvenile *in custody* of the probation officer or the court shall be held *as soon as possible* but, in all cases, within a six-month period after the petition is filed, and as to a juvenile *not in such custody as soon as practicable* but, *in all cases*, within a six-month period after the petition is filed. The computation of the six-month period provided for in this section shall be made as provided in section 29-1207, as applicable.

(Emphasis supplied.)

The statutes specifically referenced in the first paragraph of § 43-271 are concerned with juveniles taken into custody without a warrant by an officer of the peace. Specifically, § 43-248 identifies circumstances when a juvenile may be taken into temporary custody by any officer of the peace without a warrant or order of the court. Section 43-250 identifies the measures that the officer must then follow subsequent to taking a juvenile into temporary custody by § 43-248. Section 43-253 is a requirement that an immediate investigation must be made of the situation and circumstances surrounding a juvenile who is taken into temporary custody by §§ 43-248 and 43-250.

The Court of Appeals construed § 43-271 to give what it admittedly recognized was an illogical result—that only those juveniles first temporarily detained without a warrant by an officer of the peace have a statutory right to a prompt adjudication hearing and that no such statutory right exists for juveniles not initially so detained. Such a construction is inconsistent and inharmonious with the clear meaning of other provisions in the juvenile code.

Neb. Rev. Stat. § 43-279(1) (Reissue 1993), in pertinent part, states:

> When the petition alleges the juvenile to be within the provisions of subdivision (1), (2), (3)(b), or (4) of section 43-247 and the juvenile or his or her parent . . . appears with or without counsel, the court shall inform the parties:
>
> . . . .

(f) Of the right of the juvenile to a speedy adjudication hearing . . . .

The plain language of this provision of the juvenile code obviously contemplates that all juveniles who are within the provisions of § 43-247(1), (2), (3)(b), and (4) have a right to a prompt adjudication. Therefore, if, as the Court of Appeals held, only those juveniles who are first temporarily detained by an officer of the peace are afforded a statutory right to a prompt adjudication hearing, then the right to a speedy adjudication referred to in § 43-279(1)(f) for all other juveniles must be constitutionally grounded.

Even though this court has held that the U.S. and Nebraska Constitutions do not provide a "speedy trial" right in the context of a termination of parental rights proceeding, we have never specifically addressed the issue of whether a juvenile facing a delinquency adjudication has a constitutionally grounded right to a speedy adjudication. See *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990). We have not been asked to make such a determination in the instant case, and we find no reason to decide this constitutional issue, as §§ 43-271 and 43-278, when properly construed, confer a statutory right to a prompt adjudication hearing to all juveniles within § 43-247(1), (2), (3)(b), and (4). This construction is based first of all upon the three conditions of custody identified in the clear and unambiguous language of § 43-271: (1) juveniles in the temporary custody of an officer of the peace without a warrant, (2) juveniles in the custody of the probation officer or court, and (3) juveniles not in custody.

The first condition of custody is identified in the first paragraph of § 43-271. "A juvenile taken into custody pursuant to sections 43-248, 43-250, and 43-253 shall be brought before the court for adjudication as soon as possible after the petition is filed." This right applies only to those juveniles who first enter the system through temporary custody by an officer of the peace pursuant to the above named statutes. In addition, Neb. Rev. Stat § 43-277 (Reissue 1993) provides that these juveniles are to be adjudicated within a 6-month period after a petition is filed, and if the juveniles do not receive an adju-

dication hearing within 6 months, the juvenile shall be released from custody.

The second condition of custody identified in § 43-271 is "a juvenile in custody of the probation officer or the court . . . ." An adjudication hearing for such juvenile "shall be held *as soon as possible* but, in all cases, within a six-month period after the petition is filed . . . ." (Emphasis supplied.)

The third condition of custody identified in § 43-271 is "a juvenile not in such custody . . . ." An adjudication hearing must be held as to these juveniles "*as soon as practicable* but, in all cases, within a six-month period after the petition is filed." (Emphasis supplied.)

It is readily apparent from the plain language of § 43-271 that the Legislature intended to provide a statutory right to a prompt adjudication hearing for all juveniles. However, those juveniles being held in custody are to receive an adjudication hearing as soon as *possible*, whereas the juveniles not being held in custody are to receive an adjudication hearing as soon as *practicable*. Both sets of juveniles should receive an adjudication hearing within a 6-month period after the petition is filed pursuant to § 43-271, but a statutory scheduling preference is granted to those juveniles that are in custody pending adjudication. Thus, nine of the juveniles in the instant case had a statutory right under § 43-271 to a prompt adjudication hearing.

One of the juvenile petitions at issue was filed pursuant to § 43-247(3)(b). Section 43-278 provides in relevant part: "All cases filed under subdivision (3) of section 43-247 shall have an adjudication hearing not more than ninety days after a petition is filed." Section 43-278 is likewise clear and unambiguous, and provides a statutory right to a prompt adjudication hearing for those juveniles that are alleged to be status offenders under subdivision (3) of § 43-247. Therefore, although not subject to a 6-month provision, this (3)(b) petition is subject to a 90-day prompt adjudication limitation.

## 2. ABSOLUTE DISCHARGE AS A REMEDY

Our inquiry does not end with the determination that §§ 43-271 and 43-278 provide to juveniles a statutory right to

a prompt adjudication hearing. The Court of Appeals held that even if all juveniles subject to a § 43-247(1), (2), or (3)(b) petition have a statutory right to a speedy adjudication pursuant to § 43-271 or § 43-278, the use of the word "shall" in those statutes is merely directory, thus absolute discharge for the State's failure to comply is not mandated.

As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *Payne v. Nebraska Dept. of Corr. Servs.*, 249 Neb. 150, 542 N.W.2d 694 (1996). However, while the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

The Court of Appeals concluded that even if the juveniles in question did have a statutory right to a prompt adjudication hearing, this right was not violated when the statutory 6-month limit of § 43-271 is merely directory and not mandatory. For a juvenile to receive discharge from a petition, the Court of Appeals held he or she must show that the juvenile was prejudiced by the delay. In reaching this conclusion, the Court of Appeals relied on *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990).

In *In re Interest of C.P.*, this court determined that the use of the word "shall" in § 43-278 (Reissue 1988) was directory and not mandatory. The language of the former § 43-278 was identical to what is now the second paragraph of § 43-271, the statute at issue in the instant appeal. This court held because "shall" was directory, failure of the State to provide an adjudication hearing within the statutory 6-month limit did not require discharge from the petition, when the subject of the petition had not indicated how she had been prejudiced by the delay.

However, significant factual and legal distinctions exist between *In re Interest of C.P.* and the instant case. The interest at stake in *In re Interest of C.P.* was the termination of parental rights for a mother with a long history of neglect and abuse. In view of the fact that the juvenile's best interests are

the primary consideration in an adjudication hearing, we reasoned it would be absurd to construe the language in § 43-278 as mandatory, when the result would be to return a sexually abused child to the party who abused her for the sole reason that an adjudication hearing was held 181 days after a petition was filed.

Although our reasoning is persuasive within the factual context of *In re Interest of C.P.*—an abusive mother seeking to obtain an absolute discharge from the jurisdiction of the juvenile court—there are different interests at stake in the present case where it is the juveniles who seek absolute discharge from a delinquency petition after remaining unadjudicated in the juvenile court system.

Several other states have considered the question of whether the use of the word "shall" is mandatory or directory in the context of speedy adjudication statutes. The courts of two states have held the use of the word "shall" in its speedy adjudication statutes is mandatory. See, *In re Russell C.*, 120 N.H. 260, 414 A.2d 934 (1980); *Sanchez v. Family & Children Services*, 237 Ga. 406, 229 S.E.2d 66 (1976). In *In re Russell C., supra*, the New Hampshire Supreme Court concluded interpreting the word "shall" as mandatory is consistent with the goals of guaranteeing children their constitutional rights and encouraging the use of rehabilitative and treatment resources in a manner consistent with the protection of the public interest.

However, a majority of jurisdictions that have ruled on this issue have held speedy delinquency adjudication statutes to be directory out of concern for the juveniles' best interests, while balancing the juveniles' right to a prompt and fair adjudication. We are persuaded by the reasoning of those jurisdictions. In *In re Armour*, 59 Ill. 2d 102, 104-05, 319 N.E.2d 496, 498 (1974), the Illinois Supreme Court, in finding its speedy delinquency adjudication statute to be directory, stated:

> Society is interested for its own sake as well as for the minor's individual welfare in guiding and rehabilitating. These interests cannot always be served by a mechanical adherence to rote or formula. . . . We do not consider that the legislature intended that should an adjudicatory

hearing not be held precisely within 30 days that the minor should be discharged or be abandoned, as it were, and that society's effort to correct, to rehabilitate and to guide should come to a halt.

See, also, *In Interest of A.E.O. III*, 437 N.W.2d 238 (Iowa 1989); *In re T.K.*, 11 Kan. App. 2d 632, 731 P.2d 887 (1987); *State in the Interest of C.B.*, 173 N.J. Super. 424, 414 A.2d 572 (1980), *cert. denied* 84 N.J. 482, 420 A.2d 1303; *In re Therklidsen*, 54 Ohio App. 2d 195, 376 N.E.2d 970 (1977); *In re J.V.*, 154 Vt. 644, 573 A.2d 1196 (1990).

First of all, we are compelled to conclude that a delinquent child in need of treatment 180 days after the filing of a delinquency petition is likely to require treatment on the 181st day as well. Clearly, a rigid and legalistic interpretation of a juvenile's statutory right to a speedy delinquency adjudication would often be contrary to a juvenile's best interests and, ultimately, contrary to the public interest. This is particularly true in cases where the juvenile is not in custody during the 180-day period, and remedial treatment is readily available after the adjudication.

We have long recognized that a juvenile court proceeding is not a prosecution for crime, but a special proceeding that serves as an ameliorative alternative to a criminal prosecution. See *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989).

"The purpose of our statutes relating to the handling of youthful offenders is, as in other states having juvenile court systems, the education, treatment and rehabilitation of the child, rather than retributive punishment. The emphasis on training and rehabilitation, rather than punishment, is underscored by the declaration that juvenile proceedings are civil, rather than criminal, in nature. Instead of a complaint or indictment we have a 'petition.' The hearing never results in a conviction, but may lead to an 'adjudication of delinquency.' Where confinement of the delinquent child is indicated as the proper treatment, the child is not sentenced to prison but, instead, is 'committed' to a 'training school.' The adjudication of delinquency does not carry with it any of the civil dis-

abilities ordinarily resulting from conviction of crime, nor is the child considered to be a criminal because of such adjudication."

*Id.* at 614, 447 N.W.2d at 43 (quoting *Smith v. State*, 444 S.W.2d 941 (Tex. Civ. App. 1969)).

Moreover, §§ 43-271, 43-277, and 43-278, the provisions of our juvenile code which define a juvenile's right to a prompt adjudication, do so without specifying a sanction for noncompliance. A legislative enactment providing that an act be accomplished within a specified time period, with no sanction for failure to comply with that mandate, is directory. *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990).

We are not persuaded by the juveniles' assertion that §§ 43-271 and 43-277's reference to § 29-1207, a portion of the statutory right to a speedy criminal trial, compels the absolute discharge of a juvenile from a delinquency petition which remains unadjudicated 6 months after filing. Section 29-1207 is only incorporated into the juvenile code to serve as a method by which computation of the 6-month period after the petition is filed shall be made. In and of itself, § 29-1207 does not mandate a criminal defendant's discharge if not brought to trial within the prescribed time. Instead, Neb. Rev. Stat. § 29-1208 (Reissue 1995) mandates that an *adult offender* will be entitled to absolute discharge if not brought to trial within the prescribed time, and § 29-1208 has *not* been incorporated into the juvenile code. That being so, § 29-1207 cannot be considered as authority for the juveniles' claim that absolute discharge from a delinquency petition is statutorily mandated when a juvenile is not adjudicated within the required time period.

Instead, § 29-1207(4)(a) through (e) requires a juvenile court judge to exclude from the 6-month period specifically identified periods of delay resulting from, for example, other proceedings concerning the juvenile, continuances granted at the request of the juvenile, or the absence or unavailability of the juvenile. In addition, § 29-1207(4) provides for the exclusion of "(f) Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause."

Accordingly, the Court of Appeals was correct in concluding that §§ 43-271 and 43-278 are directory and do not require absolute discharge of a juvenile not adjudicated within the prescribed time period. However, we are mindful that the foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests. *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995); *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990). It is rarely in the best interests of a juvenile to have his or her case languish unadjudicated in the juvenile court for more than 6 months or 90 days in the case of a status offender. As in adult court, unreasonable delay at the adjudication stage may affect the quality and quantity of evidence presented, impairing the juvenile's defense and preventing a fair hearing. Further, in the event the juvenile is found to have committed the delinquent act or is adjudicated as a status offender, the delay is oftentimes detrimental to the youth's rehabilitation. See *In Interest of C. T. F.*, 316 N.W.2d 865 (Iowa 1982).

We therefore hold that it is within the sound discretion of the juvenile court to determine whether absolute discharge of a juvenile petition is in the best interests of a juvenile, taking into consideration (1) the factors set forth in §§ 43-271 and 43-278, (2) the right of the juvenile to a prompt and fair adjudication, and (3) the future treatment and rehabilitation of the juvenile in the event of an adjudication. The benchmark of this determination is the protection of the best interests of the juvenile. See *In re Interest of Lisa O., supra*. We further hold that an appellate court's review of the juvenile court's prompt adjudication determination shall be de novo on the record to determine whether there has been an abuse of discretion by the juvenile court. Prompt adjudication determinations are initially entrusted to the discretion of the juvenile court and will be upheld unless they constitute an abuse of discretion.

With the above standard of review in mind, we examine the record de novo to determine whether there has been an abuse of discretion by the juvenile court in dismissing the 10 separate petitions in the instant case. The court administrator for the Douglas County Separate Juvenile Court testified on behalf of the State. The court administrator testified that the juvenile

court caseload had dramatically increased in the past 10 years. During this time, both the county attorney and the public defender had added staff to handle the increase. However, there had not been a substantial increase in the number of juvenile court judges or number of judicial hours spent deciding juvenile matters. The court administrator also testified that his office had been active in doing whatever it could to reduce the backlog of cases.

On cross-examination, the court administrator testified that much of the time an entire juvenile courtroom was not in use and that a retired district judge was readily available to fill any judicial void. The court administrator further testified that there had been no attempt to bring in a juvenile court judge from Sarpy County to help reduce the Douglas County caseload and that most of the procedures implemented by his office to reduce the backlog of cases were instituted no sooner than mid-October 1994.

The juvenile court made findings that the juvenile docket was congested and that there was a need for additional judicial resources. However, the necessary relief had not been forthcoming at the time of the discharge, and, in spite of everyone's best interests, the juvenile court found that everyone's efforts had not been enough to keep up with the demand.

The juvenile court went on to find that the juveniles in the instant cases were prejudiced by the delay in adjudication because significant restraints are placed on a juvenile's liberty once the State files a delinquency petition against him or her. The juvenile court judge stated: "[A] petition from the county attorney stops that child dead in their tracks to appear for court because if they don't [sic] contempt can be cited against that child." In addition, the juvenile court noted that if a child failed to appear, they could eventually be placed in the Youth Development Center or be placed outside their home.

The State presented no evidence that would allow the juvenile court to make findings regarding specific causes of delay as enumerated in § 29-1207(4)(a) through (f) and the extensions attributable to such causes with respect to a particular juvenile. At best, the evidence adduced by the State only allows this court to conclude that in general, there was a

crowded docket in the Douglas County Separate Juvenile Court at the time of the discharge. No evidence was adduced concerning the rehabilitation needs, future treatment, or best interests of the juveniles in the case at bar. The juvenile court concluded that a crowded docket alone was insufficient as good cause to extend the 6-month period prescribed in § 43-271 or the 90-day period prescribed in § 43-278. Based upon our de novo review of the entire record, we find no abuse of discretion in the juvenile court's findings, nor with the juvenile court's use of the remedy of absolute discharge based on the circumstances of these juvenile cases.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and this matter is remanded to that court with directions to affirm the judgments of the juvenile court dismissing the juvenile petitions in the 10 separate cases that are the subject of this consolidated appeal.

REVERSED AND REMANDED WITH DIRECTIONS.