In re Estate of Earl G. Trew, deceased.
Rick L. Chaney, Personal Representative of the Estate of
Earl G. Trew, deceased, and Sandy K. Johnson, Appellees
and Cross-Appellants, v. Evelyn Catlett et al., Appellants
and Cross-Appellees.

507 N.W.2d 478

Filed November 5, 1993.    No. S-91-803.

Daniel R. Stogsdill and Gregory S. Heier, of Cline, Williams, Wright, Johnson & Oldfather, for appellants.

Craig D. Johnson, of Carpenter & Johnson, P.C., for appellees.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

The dispositive issue in this appeal is whether the nine siblings of the decedent, Earl G. Trew, may challenge Trew's paternity of two children born during his marriage to the children's mother when Trew did not contest his paternity of the children during divorce proceedings instituted by the children's mother.

The district court affirmed the county court's order (1) overruling the siblings' motion for blood testing of the children born during Trew's marriage to the children's mother and (2) determining that those children are the lawful heirs of Trew's intestate estate.

We affirm the order of the district court.

## FACTS

Earl Trew married Donna D. Curlile on October 4, 1948. Two children were subsequently born during the marriage. Rickie Lee Trew, now known as Rick L. Chaney, was born on October 24, 1956, and Sandra Kay Trew, now known as Sandy K. Johnson, was born on March 14, 1959.

On February 4, 1960, Donna Trew filed a "Complaint in Divorce" against Earl Trew in the district court for the city and county of Denver, Colorado. She alleged in her complaint that "two children [had] been born as issue of [the] marriage," namely Rickie and Sandra Trew. Donna, inter alia, prayed for "custody of the children of the parties [and] support for said children." Donna also filed a motion for temporary support money "for the minor children of the plaintiff and defendant." On June 1, after hearing testimony by the parties, both of whom were represented by counsel, the Colorado court ordered Earl to pay $25 per week "for support *for the minor children of the parties* and alimony." (Emphasis supplied.) Earl was also

granted reasonable rights of visitation "*with the children of the parties.*" (Emphasis supplied.)

On July 11, the Colorado court entered a decree of divorce giving Donna the care, custody, and control of the minor children, Rickie and Sandra, and granting Earl reasonable rights of visitation with the minor children. A further hearing on the division of property, permanent alimony, support money, custody, costs, and attorney fees was set for a date in September.

On September 15, Earl and Donna, being present with their respective attorneys, entered into an oral stipulation in the Colorado court. Pursuant to that oral stipulation and a written stipulation, an order was entered on September 29 granting Donna custody of Rickie and Sandra, and granting Earl "reasonable rights of visitation with the minor children." Throughout the order, the two children were referred to as "the minor children of the parties." Also pursuant to stipulation of the parties, Earl was ordered to pay $100 per month "for the support and maintenance of the minor children of the parties." The order further declared that Earl was $125 in arrears "for support payments for the minor children of the parties."

Following her divorce from Earl, Donna married Bob Chaney, who helped raise Rickie and Sandra, and who referred to them as his son and daughter. Both children called Bob Chaney "dad." Both testified that they always used the name "Chaney" rather than the name "Trew." On September 6, 1974, both children had their last name legally changed to Chaney. Neither child was ever adopted by Bob Chaney.

Earl married a woman named "Bonnie" after his divorce from Donna. It is uncontroverted that there were no children born of this marriage.

On October 4, 1974, Earl executed a last will and testament which included the following language: "SECOND: *I hereby give to my two children*, viz: Ricky [sic] Trew, Denver, Colorado and Sandy Trew, Denver, Colorado each the sum of Five Hundred and no/.100—($500.00)—Dollars." (Emphasis supplied.) Earl's will left the remainder of his property to his wife, Bonnie J. Trew. There was no alternative devise of the residuary estate.

Bonnie died on February 14, 1990. On June 27, Earl died without having executed a new will. Among his survivors were nine siblings. On July 3, the siblings filed in the Custer County Court an "Application for Informal Probate of Will and Informal Appointment of Co-Personal Representatives." The application stated that Earl had no children *other than Ricky* [sic] *Trew and Sandy Trew*" and that Bonnie had no children. (Emphasis supplied.) The application failed to note that Earl's children, as devisees, under Neb. Rev. Stat. § 30-2412 (Reissue 1989) had priority to be appointed personal representative. Evelyn Catlett, a sibling of the decedent, and one Rena Downey were appointed copersonal representatives of the decedent's estate in unsupervised administration on July 3. The record does not disclose the relationship, if any, of Downey to the decedent.

Neither Rick Chaney nor Sandy Johnson was aware of Earl Trew's death until after he had been buried. On August 13, 1990, Chaney filed a "Petition for Supervised Administration, Adjudication of Partial Intestacy, Determination of Heirship and Appointment of Personal Representative" in the county court for Custer County. Chaney sought to have himself named personal representative of the decedent's estate and asserted his priority pursuant § 30-2412(a)(3).

The siblings filed a motion for discovery pursuant to Neb. Ct. R. of Discovery 35 (rev. 1992) and Neb. Rev. Stat. § 43-1414 (Reissue 1988), requesting an order that Chaney and Johnson submit to a physical examination "for the purpose of obtaining a blood sample from each of the individuals in order to allow genetic testing." The siblings alleged that such testing was necessary to conclusively determine the paternity or nonpaternity of the decedent as to Chaney and Johnson. In its order on appeal, the district court noted that Trew's siblings, "some 30 + years after the birth of the children . . . dug him up to obtain tissue samples for paternity testing . . . ."

On September 28, 1990, the county court conducted a hearing on Chaney's petition for appointment of personal representative and on the siblings' motion for discovery. At that time, the parties stipulated that witnesses for the copersonal representatives would testify that Donna Trew was engaging in

sexual relations with persons other than Earl Trew, namely with Bob Chaney, during the times that Rick Chaney and Sandy Johnson were conceived.

On October 1, the county court entered an order removing the prior-appointed copersonal representatives and appointing Chaney as personal representative under supervised administration.

On November 7, the siblings filed an "Application for Adjudication of Partial Intestacy and Determination of Heirship." The siblings alleged that Chaney and Johnson were not biological or adopted children or heirs of the decedent and that the siblings were the lawful heirs.

On January 28, 1991, the county court filed an order denying the siblings' motion for genetic testing of Chaney and Johnson. The county court invoked the doctrine of collateral estoppel, stating that the decedent had not challenged his paternity of Chaney and Johnson when he had the opportunity to do so in his Colorado divorce action from Donna Trew. Referring to the divorce action, the county judge stated:

> As defendant in an adversarial proceeding, [the decedent] did not challenge nor appeal this adjudication of paternity during his lifetime . . . the privies of this decedent are now precluded from judicial relief on issues previously decided in a suit where the decedent was a proper party and within the jurisdiction of the prior court.

The county court relied upon Neb. Rev. Stat. § 30-2309 (Reissue 1989) of the Nebraska Probate Code to support its finding that Chaney and Johnson were children of Earl Trew because their paternity had been established by an adjudication before Trew's death. Although the county judge recognized that § 30-2309 announces an evidentiary standard with respect to persons born out of wedlock, the court found that the same standard applies, a fortiori, to those persons born in wedlock.

On February 21, the county judge filed a journal entry and order finding that, with the exception of the specific devises of $500 each to Chaney and Johnson, Earl Trew died intestate because the residuary gift in his will had lapsed. The county judge further found that Chaney and Johnson were the lawful issue and heirs of the decedent and were entitled to take equally

from his estate. The siblings' application was dismissed.

On March 13, the siblings filed a notice of appeal to the district court for Custer County. The district court affirmed the orders of the county court in all respects by an order filed July 30. The siblings timely appealed to this court. Chaney and Johnson cross-appeal the failure of the county court and the district court to award them attorney fees.

## ASSIGNMENTS OF ERROR

The siblings' assignments of error combine to assert that the district court erred in (1) affirming the county court's overruling of the siblings' motion for blood testing of Chaney and Johnson and (2) affirming the county court's judgment that Chaney and Johnson are entitled to the decedent's intestate estate as his issue and lawful heirs.

Chaney and Johnson assert on cross-appeal that the county court and the district court erred in not assessing attorney fees against the siblings and their counsel.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Stephenson*, 243 Neb. 890, 503 N.W.2d 540 (1993); *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292 (1993).

## ANALYSIS

### MOTION FOR BLOOD TESTING

The siblings contend that the district court erred in affirming the county court's overruling of their motion for genetic blood testing of Chaney and Johnson pursuant to Neb. Ct. R. of Discovery 35 (rev. 1992). Subsection (a) of that rule provides:

> When the mental or physical condition (including the blood group) of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician . . . . The order may be made only on motion for good cause shown . . . .

We agree with the county court that "[t]he alpha and omega of this suit can be found in the Nebraska Probate Code at Sec. 30-2309." Section 30-2309 states in relevant part:

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,

. . . .

(2) . . . a person born out of wedlock is a child of the mother. *That person is also a child of the father, if:* . . .

(ii) *the paternity is established by an adjudication before the death of the father* or is established thereafter by strict, clear and convincing proof.

(Emphasis supplied.)

When Donna Trew filed her complaint in divorce, she alleged that two children, Rickie and Sandra, had been born as issue of her marriage to Earl Trew. In those divorce proceedings, Earl Trew was ordered to pay child support for the minor children of the parties. He was granted visitation rights with the minor children of the parties. The record reflects that Earl Trew was represented by counsel at all stages of the divorce proceedings and was present in the divorce court when an oral and a written stipulation of the parties concerning the parties' minor children were offered and received in evidence by the divorce court. Although he could have contested his paternity of Chaney and Johnson at that time, he obviously chose not to do so.

The Colorado divorce proceedings involving Earl and Donna Trew constituted a final adjudication of paternity many years before the death of Earl Trew within the meaning of § 30-2309(2)(ii). Although § 30-2309(2) applies specifically to children born out of wedlock, the county court is correct in its finding that the statute applies a fortiori to children born in wedlock. Section 30-2309(2) does not give illegitimate children rights of inheritance *superior* to those of legitimate children. See *Lalli v. Lalli*, 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978) (noting that the purpose of a statutory evidentiary standard for proof of paternity allowing illegitimate children to inherit from their intestate fathers is to grant illegitimates insofar as practicable rights of inheritance *on a par* with those of legitimate children).

In probate proceedings, there is no rational basis for making a distinction between a determination of paternity in a filiation proceeding and a determination of paternity in a divorce or

dissolution proceeding. We hold as a matter of law that when the paternity of a person has been established by final order in a lawsuit in which the father has participated as a party during his lifetime, the person's paternity cannot be relitigated in connection with the distribution of the father's estate. To hold otherwise would permit an inferior court to invalidate prior final determinations of paternity by courts of general jurisdiction. It would also raise havoc with the efficient and orderly settlement of estates and the dependability of titles to property passing under the intestacy laws of this state.

Although the county court invoked the doctrine of collateral estoppel in combination with § 30-2309 to overrule the siblings' motion for blood testing, we find § 30-2309 alone to be dispositive of the issue on the facts of this case. We therefore affirm the order of the district court affirming the county court's judgment. When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm. *State v. $15,518*, 239 Neb. 100, 474 N.W.2d 659 (1991).

DETERMINATION OF HEIRSHIP

Having determined that Chaney and Johnson are children of the decedent, we need look no further than Neb. Rev. Stat. § 30-2303 (Reissue 1989) to determine the heirs to the decedent's intestate estate. According to § 30-2303, "the entire intestate estate if there is no surviving spouse, passes as follows: (1) to the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally . . . ."

"Issue" is defined in Neb. Rev. Stat. § 30-2209(23) (Reissue 1989) as "all [of a person's] lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this code." Because Chaney and Johnson are children of the decedent, they are the decedent's issue for the purposes of § 30-2303. Chaney and Johnson stand in the same degree of kinship to the decedent, and the decedent's entire intestate estate passes to them in equal shares. This assignment of error is without merit.

## ATTORNEY FEES

Finally, we turn to the question of whether the district court and the county court erroneously denied Chaney and Johnson's claim for attorney fees against the siblings and their attorney because the litigation attacking Chaney's and Johnson's paternity was frivolous, groundless, and vexatious.

The record shows that Chaney and Johnson filed a motion for attorney fees in the Custer County Court on December 6, 1990. When the county court denied the siblings' motion for discovery by order dated January 28, 1991, it also denied Chaney and Johnson's motion for attorney fees and ordered each side to pay its own counsel fees.

Upon their appeal to the district court, the siblings filed a statement of errors as required by Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 1992). Chaney and Johnson did not file a cross-appeal in the district court contesting the county court's failure to award them attorney fees, nor did they file any statement of errors in the district court. The district court, in affirming the order of the county court, ordered that neither party be awarded attorney fees in the district court.

However, there is no indication in the district court's order that it even considered the question of whether the siblings' lawsuit was frivolous, groundless, and vexatious as alleged by Chaney and Johnson in their motion for attorney fees.

> Where a cause has been appealed to [a higher appellate court] from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to [the higher] court. In the absence of plain error, where an issue is raised for the first time in [the higher appellate court], it will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition.

*Haeffner v. State*, 220 Neb. 560, 564, 371 N.W.2d 658, 661 (1985).

It is apparent that the issue of attorney fees was never properly presented to the district court, and therefore, the district court could not commit error in this regard. There being no plain error, this court is obligated to disregard this assignment of error.

## CONCLUSION

The order of the district court affirming the judgment of the county court is affirmed.

AFFIRMED.

HASTINGS, C.J., not participating.