RENE McQUINN, APPELLANT, v. DOUGLAS COUNTY SCHOOL
DISTRICT NO. 66 ET AL., APPELLEES.

612 N.W. 2d 198

Filed June 16, 2000.    No. S-99-100.

Robert E. O'Connor, Jr., for appellant.

Allen E. Daubman, of Koley, Jessen, Daubman & Rupiper, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In this error proceeding commenced in the district court for Douglas County, Nebraska, Rene McQuinn challenges the decision by the board of education (Board) of the Douglas County School District No. 66 (District) not to renew her contract as a probationary certificated teacher following the 1996-97 school year. She claims that the District failed to comply with various statutory provisions governing the procedure for evaluation of probationary employees and that the proceedings which led to the nonrenewal of her contract were conducted in violation of statutes governing teacher tenure and open public meetings. Following a judgment by the district court in favor of the school district, McQuinn perfected this timely appeal. We find no error and therefore affirm.

## I. BACKGROUND

Under Nebraska law, a public school teacher is considered a "probationary certificated employee" during the first 3 years of employment by a school district. Neb. Rev. Stat. § 79-824(3) (Reissue 1996). "The purpose of the probationary period is to allow the employer an opportunity to evaluate, assess, and assist the employee's professional skills and work performance prior to the employee obtaining permanent status." Neb. Rev. Stat. § 79-828(2) (Reissue 1996). "The contract of a probationary certificated employee shall be deemed renewed and remain in full force and effect unless amended or not renewed" in accordance with statutory procedures. § 79-828(1). A teacher who remains employed by the school district after serving the probationary period is considered to be a "permanent certificated employee." § 79-824(5).

Commencing with the 1994-95 school year, McQuinn was employed by the District as a probationary certificated employee assigned to teach at Westside Middle School. She remained employed by the District during the 1995-96 and 1996-97 school years, during which time she taught sixth grade at Oakdale Elementary School. On March 26, 1997, the Oakdale

principal, Robert Bruckner, notified McQuinn by letter that he would not be recommending the renewal of her teaching contract for the 1997-98 school year, citing problems with classroom management. On April 1, McQuinn received a letter from Lee Perkins, the assistant superintendent for the District, in which he stated that based on Bruckner's recommendation, McQuinn's probationary position with the District was "under consideration for termination" at the close of the 1996-97 school year. Perkins sent additional notice to McQuinn on April 8, in which he reiterated that McQuinn's contract was being considered for termination and notified her of her right to request a hearing before the Board. McQuinn exercised this right in a letter to Perkins dated April 12, 1997.

An informal hearing regarding the nonrenewal of McQuinn's contract was held before the Board on May 6, 1997. Both McQuinn and the District were represented by counsel. At the beginning of the hearing, the presiding member of the Board inquired of McQuinn whether she preferred the proceeding to continue in open or closed session. McQuinn responded that she preferred an open session. Perkins, Bruckner, McQuinn, and parents of several students who were taught by McQuinn testified at the hearing.

Bruckner recommended that McQuinn's contract not be renewed based on his classroom observations and evaluations of her classroom management during the 1996-97 school year. In this context, the term "classroom management" pertains generally to the ability of a teacher to maintain an appropriate level of student participation and behavior in the classroom setting. McQuinn testified that Bruckner never told her during the 1996-97 school year that her control over her students was inadequate or that her classroom management skills were otherwise deficient. She believed that classroom management was listed as an area for growth on each of the three evaluations performed by Bruckner during the 1996-97 school year because that was an area in which all teachers should strive to continuously improve. She stated that Bruckner did tell her to improve her technology skills and that she had taken steps in that direction. McQuinn claimed that Bruckner never warned her during the 1996-97

school year that her job was in jeopardy due to her problems with classroom management.

After the parties presented closing arguments, the Board announced that it would conduct its deliberations in a private room, to which neither McQuinn nor the District objected. The Board later returned to open session and announced it was recessing its deliberations "to obtain legal counsel on the options available to the Board. We would hope to be able to work out an agreement with Mrs. McQuinn and the District for a waiver of tenure and continuation of a probationary status and assignment to another school." Thereafter, the parties agreed in writing to extend the deadline for a hearing and for final action by the Board to June 15, 1997, as permitted by Neb. Rev. Stat. § 79-831 (Reissue 1996).

Attorneys for McQuinn and the District then began drafting an agreement whereby McQuinn's contract would be renewed subject to the condition that she would remain on probationary status. In a letter to McQuinn's attorney dated May 23, 1997, the attorney for the District wrote: "The next Board of Education meeting is Monday, June 2, at 7:30 p.m. I believe the Board will reconvene its deliberations on Ms. McQuinn's contract at the end of the meeting. Following deliberations, the Board will vote to renew, not renew, or extend probationary status per our negotiated Agreement." In a second letter to McQuinn's attorney, dated May 28, 1997, the attorney for the District wrote:

Per your facsimile transmission yesterday afternoon, I have enclosed duplicate originals of the Agreement between Ms. McQuinn and the Board of Education. Please have Ms. McQuinn sign both originals and return them to me. The Agreement will be included with the materials sent to each Board member for the Board meeting on June 2.

The Agreement will not be effective unless and until appropriate action is taken by the Board. As I advised in my letter of May 23, the Board will reconvene its deliberations at the end of the meeting. Following deliberations, the Board will vote to renew, not renew, or extend probationary status per the enclosed Agreement. If it votes to extend probationary status, the Agreement will be executed by the Board.

On May 30, 1997, the Board published notice in "The Daily Record of Omaha" of the agenda for its regular meeting to be held on June 2, and simultaneously made available the agenda for the June 2 meeting at the board of education offices. At the bottom of the agenda was the following heading: "*IX. Executive Session - Personnel Issue (RE: Rene J. McQuinn)."

Neither McQuinn nor her attorney was present when the Board met on June 2, 1997. At the conclusion of its regular business, the Board went into executive session "to discuss a personnel issue dealing with Rene J. McQuinn." After its deliberations, the Board returned to open session and voted in favor of nonrenewal of McQuinn's contract. In a letter dated June 3, 1997, Perkins notified McQuinn that the Board had voted at its June 2 meeting not to renew her teaching contract for the 1997-98 school year.

In her petition in error, McQuinn asserted that the Board violated her due process rights by failing to conduct its deliberations in open session pursuant to her request and the provisions of Neb. Rev. Stat. § 79-834 (Reissue 1996) and Nebraska's public meetings laws, codified at Neb. Rev. Stat. §§ 84-1408 through 84-1414 (Reissue 1994 & Cum. Supp. 1996); that the Board erred in not finding that the District failed to follow the evaluation guidelines pursuant to § 79-828(2); that the Board erred by not notifying McQuinn of its intent to reconvene the hearing adjourned on May 6, 1997; and that the Board erred in construing the contract between McQuinn and the District as not requiring just cause for termination. The district court affirmed the Board's actions, finding that McQuinn was a teacher under a probationary teaching contract, that she was properly notified that her contract would not be renewed, and that McQuinn requested a hearing and said hearing was held. The court further found that Bruckner evaluated McQuinn on several occasions during the first and second semesters of the 1996-97 school year, followed each time by a conference in which Bruckner discussed his observations with McQuinn and made suggestions for improvement. The court found that McQuinn admitted in her testimony at the hearing before the Board that these conferences with Bruckner did take place. The court concluded by finding that the hearing on May 6 was an informal hearing pursuant to

§ 79-834 and, except for deliberations and taking of the vote, was held in open session. The court held that McQuinn's due process rights were not violated and further found that "[t]he statute only requires that the formal action for non-renewal be held in open session."

McQuinn appeals the decision of the district court. We removed the appeal to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. ASSIGNMENTS OF ERROR

McQuinn contends, summarized and restated, that the district court erred (1) in affirming the Board's decision not to renew her contract; (2) in not finding that the District failed to follow the procedures for observation and review of a probationary teacher's performance during McQuinn's third year of employment as required by § 79-828(2); (3) in not finding that the District failed to follow its own established practice and procedures for evaluations; (4) in finding that Bruckner evaluated McQuinn on several occasions during the 1996-97 school year; (5) in finding that in an informal hearing under § 79-834 requested by the probationary employee, the Board can go into closed session to deliberate and take a vote and need only take its formal action of nonrenewal in open session and that such action does not violate due process, the public meetings laws, § 84-1410, or § 79-834; and (6) in failing to find that the District did not give McQuinn the required notice of any reconvened hearing.

## III. STANDARD OF REVIEW

■ The standard of review in an error proceeding from an order terminating the contract of employment of a probationary certificated employee is whether the school board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. See, *Cox v. York Cty. Sch. Dist. No. 083*, 252 Neb. 12, 560 N.W.2d 138 (1997); *Drain v. Board of Ed. of Frontier Cty.*, 244 Neb. 551, 508 N.W.2d 255 (1993); *Nuzum v. Board of Ed. of Sch. Dist. of Arnold*, 227 Neb. 387, 417 N.W.2d 779 (1988). In this context, evidence is " 'sufficient as a

matter of law' . . . if a judge could not, were the trial to a jury, direct a verdict; it is something less than the weight of the evidence and can be such as to permit the drawing of two inconsistent conclusions." *Eshom v. Board of Ed. of Sch. Dist. No. 54*, 219 Neb. 467, 471, 364 N.W.2d 7, 11 (1985).

## IV. ANALYSIS

Section 79-828 and the statutes referred to therein clearly authorize a school board to elect not to renew a probationary certificated employee's contract. Thus, in the present case, it is clear that the Board acted within its jurisdiction and that the only question to be decided is whether the evidence is sufficient as a matter of law to support its decision.

### 1. COMPLIANCE WITH STATUTORY OBSERVATION AND EVALUATION PROCEDURES

While the contract of a permanent certificated employee of a school district may be terminated only for specific grounds enumerated in Neb. Rev. Stat. § 79-829 (Reissue 1996), a school board may elect not to renew the contract of a probationary certificated employee "for any reason it deems sufficient if such nonrenewal is not for constitutionally impermissible reasons" and the nonrenewal is carried out in conformity with statutory requirements. See § 79-828(4). These include the requirement of § 79-828(2), which provides in part:

> All probationary certificated employees employed by Class I, II, III, and VI school districts shall, during each year of probationary employment, be evaluated at least once each semester, unless the probationary certificated employee is a superintendent, in accordance with the procedures outlined below:

> The probationary employee shall be observed and evaluation shall be based upon actual classroom observations for an entire instructional period. If deficiencies are noted in the work performance of any probationary employee, the evaluator shall provide the teacher or administrator at the time of the observation with a list of deficiencies, a list of suggestions for improvement and assistance in overcoming the deficiencies, and followup evaluations and assistance when deficiencies remain.

We stated in *Cox v. York Cty. Sch. Dist. No. 083, supra,* that these procedural requirements are a prerequisite to a school board's election to amend or not renew the contract of a probationary certificated teacher. See, also, *Kennedy v. Board of Ed. of Sch. Dist. of Ogallala,* 230 Neb. 68, 430 N.W.2d 49 (1988); *Nuzum v. Board of Ed. of Sch. Dist. of Arnold, supra.* The statutes do not require either the evaluation or the listing of perceived deficiencies to be in written form. *Nuzum v. Board of Ed. of Sch. Dist. of Arnold, supra.*

McQuinn contends that the statutory evaluation procedures were not followed during her third year of employment by the District. With respect to the first semester of that year, the record reflects that Bruckner and McQuinn developed a written growth plan dated November 2, 1996, as a followup to evaluations of McQuinn's performance during the preceding school year. The growth plan listed "Active Participation" as a goal for the 1996-97 school year. Bruckner testified that this was an aspect of classroom management. The record also reflects that Bruckner conducted two formal observations of McQuinn's performance during the first semester, each for an entire instructional period. Bruckner's contemporaneous notes of the first observation on November 8 reflect several deficiencies in McQuinn's performance, including her improper reference to some students in the class as belonging to the "upper group"; imputing one student's inability to understand the material to the entire class; alienating gifted students in the class by referring to them as "challenge" students; spending too much time addressing one child's question, allowing other students to get off task; confusing students by moving between trains of thought without forewarning; and having problems with "on-task behavior." Bruckner testified at the hearing that all of these listed items relate to classroom management and that during a conference with McQuinn immediately following his observation, he discussed all of these areas with her and offered suggestions and strategies for dealing with the areas of concern.

Bruckner conducted a second formal observation of McQuinn's classroom performance on December 10, 1996, during which he noted inattentiveness among McQuinn's students. During a conference following this observation,

Bruckner discussed the inattentiveness issue with McQuinn and offered suggestions on how to deal with students who are off task.

During the second semester of the 1996-97 school year, Bruckner conducted one formal observation for an entire instructional period on February 17, 1997, as well as three to four subsequent informal "walk-through" evaluations. Bruckner's notes from the formal observation list "management," including problems with inattentiveness, as an area for growth. Following this evaluation, Bruckner testified that he held a conference with McQuinn and discussed these classroom management issues, offering suggestions and strategies on how to deal with the problems. At some point soon after this evaluation session, Bruckner concluded that no significant improvement had been made in the classroom management problems exhibited by McQuinn since the 1995-96 school year. He testified that "up until February we were in, I guess, in a position to — to try to fix things and make things better and — and to help her improve the best we could. It occurred to me after my February observation that — that things had not, in fact, gotten any better." Based on his observations, Bruckner concluded that McQuinn did not effectively and consistently manage her class during the 1996-97 school year and that her classroom management skills declined during the 1996-97 year as compared to the preceding year. He therefore recommended that her contract not be renewed.

■ McQuinn argues that she was never advised that failure to correct her problems with classroom management would place her contract in jeopardy. In rejecting a similar argument in *Nuzum v. Board of Ed. of Sch. Dist. of Arnold*, 227 Neb. 387, 417 N.W.2d 779 (1988), we determined that there was no statutory requirement that a probationary certificated employee be specifically told that a perceived performance deficiency is of such a magnitude that a failure to remedy it would lead to nonrenewal of the employment contract.

Based upon our review of the record, we conclude that there is sufficient evidence as a matter of law to establish compliance by the District with the observation and evaluation procedures required by § 79-828(2).

## 2. COMPLIANCE WITH INTERNAL OBSERVATION
### AND EVALUATION PROCEDURES

■ McQuinn argues and assigns as error that Bruckner failed to follow the District's established policies and procedures for evaluations by failing to complete some of the District's preprinted evaluation forms during his formal evaluations of McQuinn during the 1995-96 school year and by failing to utilize these forms during the 1996-97 school year. We do not reach this assignment of error because it was not asserted in the petition in error filed in the district court. Where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to the higher court. In the absence of plain error, where an issue is raised for the first time in the higher appellate court, it will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition. *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). We find no basis for plain error review regarding this issue.

### 3. COMPLIANCE WITH STATUTORY NOTICE
### AND HEARING PROCEDURES

McQuinn contends that by the Board's deliberating in closed session immediately following the hearing on May 6, 1997, and during its subsequent meeting on June 2, the Board violated both § 79-834, governing informal hearings involving the non-renewal of a probationary certificated employee's contract, and Nebraska's public meetings laws, §§ 84-1408 to 84-1414. She also contends that she did not receive adequate notice of the June 2 meeting, during which the Board announced its decision not to renew her contract. We address these issues in chronological sequence.

### (a) May 6, 1997, Hearing

A probationary certificated teacher who receives notice that the school district has elected not to renew his or her contract may request a hearing before the school board. § 79-828(5) and (8). The hearing is governed by § 79-834, which provides:

Hearings involving the question of the nonrenewal of a probationary certificated employee's contract or the nonrenewal of a superintendent shall not be due process hearings and shall not be required to meet the requirements of section 79-832 but shall be informal hearings at which the probationary certificated employee or superintendent, or his or her representative, shall be afforded the opportunity to discuss and explain his or her position with regard to continued employment, to present information, and to ask questions of those appearing on behalf of the school district. Such hearings shall be held in closed session at the request of the certificated employee or superintendent, or his or her representative, and upon affirmative vote of a majority of the school board members present and voting, but the formal action of the school board for nonrenewal shall be in open session.

The Board honored McQuinn's expressed preference for an open hearing, but at the conclusion of the hearing, the board announced that it would deliberate privately in another room. Although McQuinn did not object at the time, she now argues that the Board's private deliberations violated § 79-834 and Nebraska's public meetings laws, §§ 84-1408 to 84-1414.

■ We do not construe § 79-834 or any other statute dealing specifically with the subject of a school district's nonrenewal of a probationary employee's contract to require that a school board deliberate in open session following an open hearing. The deliberations occur after the hearing is concluded. There is no specific statutory requirement that the deliberations occur on the same day as the hearing, as reflected by the fact that pursuant to § 79-831, hearings must be held within 30 days of the date of request, but the deadline for final action by the school board is May 15. As the district court correctly concluded, all the statute requires is that "formal action for non-renewal be held in open session." See § 79-834. We therefore turn to McQuinn's contention that the school board's private deliberations on May 6, 1997, violated Nebraska's public meetings laws.

Neb. Rev. Stat. § 79-554 (Reissue 1996) provides that "[a]ll meetings of [a school board or board of education] shall be subject to sections 84-1408 to 84-1414." Sections 84-1408 to 84-1414

compose Nebraska's public meetings laws. The intent of the public meetings laws can be found at § 84-1408, which provides:

It is hereby declared to be the policy of this state that the formation of public policy is public business and may not be conducted in secret.

Every meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies, except as otherwise provided by the Constitution of Nebraska, federal statutes, and sections 79-317, 84-1408 to 84-1414, and 85-104.

However, the public meetings laws specifically provide that they shall not apply to "judicial proceedings unless a court or other judicial body is exercising rulemaking authority, deliberating, or deciding upon the issuance of administrative orders." § 84-1409(1)(g)(ii). The issue we must address in determining the applicability of the public meetings laws to the Board's proceedings on May 6, 1997, therefore, is whether the Board exercised judicial functions when it conducted the hearing pursuant to § 79-834 and deliberated immediately thereafter. In this regard, we note that Neb. Rev. Stat. § 79-833 (Reissue 1996) refers to "error proceedings to reverse, vacate, or modify a final order by a school board made pursuant to sections 79-824 to 79-842." Error proceedings are limited by statute to a review of " '[a] judgment rendered or final order . . . made by any tribunal, board, or officer *exercising judicial functions* and inferior in jurisdiction to the district court.' " (Emphasis supplied.) *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 140, 517 N.W.2d 113, 115 (1994), quoting Neb. Rev. Stat. § 25-1901 (Reissue 1989). A board exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. *Id.*; *Thomas v. Lincoln Public Schools*, 228 Neb. 11, 421 N.W.2d 8 (1988). "Adjudicative facts" are those ascertained from proof adduced at an evidentiary hearing which relate to a specific party. *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988); *Kropp v. Grand Island Pub. Sch. Dist. No. 2, supra*. In *Thomas v. Lincoln Public Schools*, we recognized that a school board exercises certain "judicial functions" with respect to certificated employees.

The hearing on May 6, 1997, and the deliberations which immediately followed pertained solely to disputed adjudicative facts bearing upon whether the school district had performed the procedural prerequisites and had a sufficient basis for its decision not to renew McQuinn's contract. The proceedings pertained only to McQuinn and did not involve the exercise of rulemaking authority or the deliberation or decision upon the issuance of administrative orders. See *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). Accordingly, we conclude that because the Board's actions during the May 6, 1997, proceedings were limited to the exercise of a judicial function, the public meetings laws were inapplicable to such proceedings.

### (b) June 2, 1997, Meeting

McQuinn argues that the Board's actions during its regular meeting on June 2, 1997, did not constitute a "reconvening" of the hearing conducted on May 6 and that she did not receive statutory notice of any reconvened hearing. Brief for appellant at 30. From our review of the record, we agree that the hearing was never reconvened because it was concluded on May 6. The Board did not receive any new evidence or information on June 2, but merely continued its deliberations regarding McQuinn's contract in executive session and then went into open session to take formal action with respect to McQuinn's contract. The Board's regular meeting on June 2 was subject to the public meetings laws pursuant to § 79-554. The Board published notice as required by § 84-1411. In addition, the attorney for the Board sent two letters to McQuinn's attorney, dated May 23 and 28, 1997, advising that the Board would announce its formal action with respect to McQuinn's contract at the June 2 meeting. McQuinn's contention that she did not receive adequate notice with respect to the June 2 meeting is without merit.

Finally, we address McQuinn's contention that the Board acted in contravention of her request for an open hearing when it went into executive session during its June 2, 1997, meeting before announcing its decision in open session. As we have noted, the hearing pursuant to § 79-834 was concluded on May 6 and was conducted in open session as requested by McQuinn.

As permitted by § 79-831, the parties signed an agreement dated May 9, 1997, which waived the requirement that final action by the school district be taken by May 15 and continued the period for taking such action to June 15.

The public meetings laws permit a public body to meet in closed session for various reasons, including "[e]valuation of the job performance of a person when necessary to prevent needless injury to the reputation of a person and if such person has not requested a public meeting," but requires any formal action regarding such matters to be taken in open session. § 84-1410(1)(d). The agenda for the Board's June 2, 1997, meeting included an item listed as "*IX. Executive Session - Personnel Issue (RE: Rene J. McQuinn)." The board acted in conformity with § 84-1410(1)(d) by going into executive session to discuss the issue of McQuinn's continued employment and then returning to open session for a motion and vote with respect to the nonrenewal of her contract.

### V. CONCLUSION

Our scope of review in this error proceeding is narrow. The issue is not whether we agree with the action taken by the school district, but whether that action was supported by sufficient evidence as a matter of law. For the reasons stated above, we conclude that it was and that McQuinn's assignments of error are without merit. Accordingly, we affirm the judgment of the district court.

AFFIRMED.