REQUESTED BY: Timothy J. Texel, Director Power Review Board
QUESTION: Whether the Power Review Board can legally accept oral or written statements or documents from interested individuals during a public meeting convened after the Board has held an evidentiary hearing on whether to approve new generation or transmission facilities.
CONCLUSION: No.
The Nebraska Power Review Board is described as an independent board consisting of five members, none of whom may within the four years preceding his or her appointment have been a director, officer, or employee of any electric utility or an elective state officer. Members are appointed by the Governor, subject to approval of the Legislature. Neb. Rev. Stat. § 70-1003 (Cum. Supp. 2000).
The Power Review Board has been charged with implementing the State's electrical policy. This policy includes the avoidance and elimination of conflict and competition between public power districts and other public or quasi-public electricity suppliers, the avoidance and elimination of duplication of facilities and resources which otherwise might result from such competition, and the facilitation of the settlement of rate disputes between suppliers of electricity. Neb. Rev. Stat. § 70-1001 (Cum. Supp. 2000). As described by the Nebraska Supreme Court, "The effect of the statute . . . was to place a limitation upon the construction of duplicating plants and transmission lines among public corporations, including cities, all for the public interest." City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 447,138 N.W.2d 629, 635 (1965).
Your question has arisen in the context of the Board's administration of this group of subjects and, more particularly, in connection with the Board's duties to approve or disapprove applications from electric suppliers seeking to construct or acquire electric generation facilities or any transmission lines or related facilities carrying more than 700 volts. Neb. Rev. Stat. § 70-1012 (1996). Approval of an application requires a finding that the proposed construction or acquisition will serve the public convenience and necessity, and that the applicant can most economically and feasibly supply the electric service resulting from the proposed construction or acquisition, without unnecessary duplication of facilities or operations. Neb. Rev. Stat. § 70-1014 (1996).
It is possible for the board to issue its approval without a hearing, "upon the filing of such waivers as it may require, if in its judgment the finding required by section 70-1014 can be made without a hearing." Neb. Rev. Stat. § 70-1013 (1996). Otherwise, the board is to fix a time and place for hearing and give ten days' notice by mail to "such alternate power suppliers as it deems to be affected by the application". Id. "Any parties interested may appear, file objections, and offer evidence." Id. The statute also indicates that the hearing is to be conducted as provided in Neb. Rev. Stat. § 70-1006, which states that the board is to hear testimony and receive other evidence relating to the matter in accordance with such rules of procedure as the Board may adopt.
285 NAC 2 (1989) is the chapter of the Board's rules which addresses the application process envisioned by section 70-1012. Appendix C to those rules is the application form. Insofar as pertinent here, it requires the applicant to name "[t]he owners of electric generation facilities, electric transmission lines, and/or related facilities, and any other persons or organizations known to the applicant whom the applicant believes to be interested in this application. . . ." Emphasis added. Chapter 3 of the rules sets out the hearing procedures. Persons or entities appearing before the Board are designated as Applicants, Protestants (those objecting to an application), Respondents (used in complaint proceedings), Complainants (same), and Intervenors (any person who has an interest in the proceedings but doesn't fall within the other designations). 285 NAC 3.003.01. Upon receipt of an application, the Director is to mail notice of its receipt to all interested parties, who then have twenty days to file a protest or reply. 285 NAC 3.012.
You have advised that although it is not required by law or by the Board's rules, the Board publishes notice of the application in a newspaper with general circulation in the area where the proposed facility is to be located. The example you provided of such a notice reveals that it also served as a notice of the Board's hearing on the application, advising that at that time the Board will receive testimony and other evidence regarding the application. A portion of the notice reads as follows:
Any interested persons may attend the hearing. Parties wishing to be heard or to protest said application, or in any way participate in the hearing, must file a Petition to Intervene with the Board prior to the time of the hearing. Any interested parties granted intervention may appear, file objections, and offer evidence regarding this application.
The Board's practice is to hold the hearing in conjunction with its regular meeting. After attending to other business, the Board recesses the meeting and conducts the hearing. At the conclusion of the hearing, the Board reconvenes its public meeting and considers the application which was the subject of the hearing. Perhaps from past experience, you foresee times where a person or entity who has not intervened and who has not participated in the evidentiary hearing will ask to address the Board concerning the application at the public meeting, wanting either to speak toward the matter or provide written statements or documentation. You add that occasionally someone will send a letter addressing the application and ask that it be included in the hearing record or provided to the Board at its meeting.
The Board is understandably reluctant to foreclose public comment at this juncture, but is also concerned about taking action which may violate the rights of the applicant or intervenors to a fair hearing, thereby jeopardizing the Board's disposition of the application.
Discussion
The Board's primary focus at the hearing on the Application is economic; that is, whether the applicant can most economically and feasibly supply the electric service which is proposed and whether the service is really needed in view of the existing service's capacities. Neb. Rev. Stat. § 70-1014 (1996). Although "public convenience and necessity" is a factor, said to encompass "numerous imponderables," Nebraska Public Power Dist. v. Nebraska Safe Energy Alternatives, Inc.,215 Neb. 8, 18, 337 N.W.2d 107, 113-114 (1983), it is not as far reaching as one might think. For instance, it does not empower the Board to consider whether the route of a proposed transmission line is the best one; that is the utility's decision. Lincoln Elec. System v. Terpsma,207 Neb. 289, 290, 298 N.W.2d 366, 367 (1980). The fact that Neb. Rev. Stat. § 70-1013 (1996), only mentions the mailing of notice to alternate power suppliers contributes to the impression that it was anticipated that the electrical suppliers would be the ones supplying the Board with information and argument pertinent to the question of whether the application should be granted.
It has been held that matters decided by the Power Review Board after evidentiary hearing are contested cases within the meaning of the Administrative Procedures Act (APA). City of Lincoln v. Nebraska Public Power Dist., 191 Neb. 556, 216 N.W.2d 722 (1974), cited with approval in Federal Land Bank of Omaha v. Midwest Electric Membership Corporation,223 Neb. 897, 902, 395 N.W.2d 488, 492 (1986). The APA is intended to constitute an independent act establishing minimum administrative procedure for all agencies. Neb. Rev. Stat. § 84-916 (1999). A "contested case" within the meaning of the APA is "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Neb. Rev. Stat. § 84-901(3) (1999).
In contested cases, "[a]ll evidence including records and documents in the possession of the agency of which it desires to avail itself shall be offered and made a part of the record in the case. No factual information or evidence other than the record shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or incorporated by reference." Neb. Rev. Stat. § 84-914(3) (1999). The APA also prohibits making or entertaining ex parte communication in contested cases. Neb. Rev. Stat. § 84-914(6) (1999). Ex parte communication is defined as "oral or written communication which is not on the record in a contested case with respect to which reasonable notice to all parties was not given." Neb. Rev. Stat. § 84-901(4) (1999).
Comments made during the public meeting held after the hearing was concluded may come within the prohibition against ex parte communication. Consideration is not permitted of such comments or letters which had not been offered and introduced in the hearing, at least if they are factual or evidentiary in nature.
There may be countervailing considerations, though. The Legislature has declared that "[e]very meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies, except as otherwise provided by the Constitution of Nebraska, federal statutes, and sections79-317, 84-1408 to 84-1414, and 85-104." Neb. Rev. Stat. § 84-1408
(1999) (emphasis added). Assuming that deciding upon the application is an agenda item for the public meeting, it is conceivable that some interested individual, even though not a party to the hearing, may want to speak on the topic at the meeting. However, within the definition of "public body" found in Neb. Rev. Stat. § 84-1409 (1999), one finds the statement that "[s]ections 84-1408 to 84-1414 shall not apply to . . . (ii) judicial proceedings unless a court or other judicial body is exercising rulemaking authority, deliberating, or deciding upon the issuance of administrative orders. . . ." In McQuinn v. Douglas County School Dist. No. 66, 259 Neb. 720, 731. 612 N.W.2d 198, 206 (2000), it was said that, "[a] board exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. . . . "Adjudicative facts" are those ascertained from proof adduced at an evidentiary hearing which relate to a specific party." Id. at 731, 612 N.W.2d at 206. The ruling on a utility's application would seem to fit this criterion. Added support for the belief that the Board is exercising a judicial function is found in City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 138 N.W.2d 629
(1965), where in the context of a challenge to the Power Review Board's approval of a utility's application for construction of a transmission line, the court referred to the power legislatively granted to the Board as a quasi-judicial one. Id. at 448, 138 N.W.2d at 635. Because of the judicial proceedings exception, the requirements of the public meetings law would not govern the Board's decisionmaking process. One may ask whether decisions on applications such as those at issue here fall within the "administrative order" exception to the "judicial proceedings" exception from the public meetings law, since the syllabi of the court in some of the appeals from decisions of the Board indicate that the topic involves administrative orders. However, in our view what was contemplated by the "administrative order" exception were court orders that involve the setting of policy for all cases, not orders entered by an administrative body in a contested case.
Therefore, this office is of the view that the requirements of the APA pertaining to contested cases would take priority and that evidence should not be entertained beyond that which was offered and received at the hearing.
We acknowledge that it seems somewhat odd to close the door to public comment when "public convenience and necessity" is one of the things to be considered by the Board and where the matter being addressed can have such far reaching impact. Some have criticized the use of the trial model in administrative settings because it excludes such opportunity for comment. See Charles H. Koch, Jr., Administrative Law and Practice, § 1.2 at p. 8 (2nd ed. 1997). The Board, by rule, has softened the exclusionary impact by establishing a procedure whereby persons may apply to intervene in the case. This provides them an opportunity to provide input within the context, and with the protections attendant to, a formal hearing. If the door is to be opened further, legislative action may be required. Another option would be to obtain on-the-record consent to entertain public comment. If all parties to the hearing agree to permit it, then they probably would have no basis to complain about it later, especially if an opportunity was afforded them for rebuttal.
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
_____________________________ Attorney General